**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Barbara GOSSELIN, Appellant.**

Superior Court of Pennsylvania.

Argued Aug. 31, 2004.
Filed Nov. 5, 2004.

Dirk S. Berger, Pottsville, for appellant.

Andrew J. Serina, Asst. Dist. Atty., Pottsville, for Com., appellee.

BEFORE: HUDOCK and KLEIN, JJ., and McEWEN, P.J.E.

OPINION BY HUDOCK, J.:

¶ 1 This appeal revolves around the life and times of Nutkin the squirrel.

¶ 2 Nutkin's early life was spent in the state of *ferrae naturae*, in the state of South Carolina, and, as far as we can tell, in a state of contentment. She apparently had plenty of nuts to eat and trees to climb, and her male friends, while not particularly handsome, did have nice personalities. Life was good.

¶ 3 Then one day tragedy struck: Nutkin fell from her tree nest!

¶ 4 But fate was kind. Nutkin was found and adopted by Appellant and her husband who, at that time, were residents of South Carolina. Appellant lovingly nursed Nutkin back to health, and Nutkin became the family pet. A large room-sized enclosure was built so Nutkin had plenty of room to run and climb. Life was good again.

¶ 5 Nutkin's captivity and domestication were perfectly legal in South Carolina, possibly a reflection of that state's long tradition of hospitality to all.

¶ 6 In 1994, Appellant and her husband moved to Pennsylvania and brought Nutkin with them. Life was full of promise.

¶ 7 Dark clouds began to gather, however, in November, 2002, when Appellant's husband phoned the Pennsylvania Game Commission concerning a hunter whom he and Appellant believed was hunting near an area on their property where they had set out food for deer. In response to that

complaint, a Wildlife Officer appeared at Appellant's property to investigate. At that time the Officer became aware that a deer had been illegally shot on Appellant's property and dragged to a neighboring property. Appellant and her husband requested that the Game Officer further investigate the poaching of the deer. The Officer refused to do so, but when he spotted Nutkin in her room-sized enclosure, he advised Appellant that it was a violation of the law to keep Nutkin in this manner. The Game Officer acknowledged that the squirrel was too old and too tame to be released to the wild (A situation akin to that of an old appellate judge, like the undersigned, attempting to return to the boiling cauldron of the trial court after being tamed by years of peace and quiet above the fray. Chances of survival of both species are poor.) He offered to forgo citing Appellant if she would relinquish Nutkin to his control. Appellant and her husband refused.

¶ 8 The reasons for this refusal are not apparent of record, but familial ties no doubt played a part in the decision. (At oral argument, our esteemed colleague, Judge Klein, alluded to the possibility of "squirrel stew", but there is insufficient evidence to support this horrific supposition.)

¶ 9 Nutkin would then learn the shocking truth that the cheery Pennsylvania slogan "You've got a friend in Pennsylvania" did not apply to four-legged critters like Nutkin. On December 2, 2002, the Wildlife Conservation Officer issued a citation directed to Appellant's husband for violating section 2307(a) of the Game and Wildlife Code, entitled "Unlawful taking or possession of game or wildlife".[1] For some unexplained reason, this citation was withdrawn and a new citation alleging the same violation was directed to Appellant.

¶ 10 Appellant had become known to the Pennsylvania Game Commission by appearing to testify before the Game and Fisheries Committee of the Pennsylvania House of Representatives in September, 2001. In this testimony, the Appellant complained about the enforcement proceedings of the Pennsylvania Game Commission, and particularly complained of the fact that every year "bubba" hunters showed up in the woods near their house to drive out the deer and the hunters were guilty of various other displays of bad hunting manners. Stipulation of Facts, 8/5/03, Exhibit C. She further testified to her opinion that the Game Commission is "against any landowner who posts their property." *Id.*

¶ 11 While there is no explicit claim of retaliatory prosecution, the stipulated facts show an interesting temporal relationship between Appellant's complaints both to the Game Commission and the General Assembly and her present difficulties.

■ ¶ 12 In any event, Appellant was convicted of the offense before a district justice and again before the common pleas court in a trial *de novo* based upon stipulated facts. She was fined $100.00 plus the costs of prosecution. While the trial court did not file an opinion, it did provide the following reasoning in support of its decision in a footnote to the order finding Appellant guilty:

*To sustain this finding, reference must be had to the PA Code Title 58 Chapter 137 in which it is provided at 137.1(a), "unless otherwise provided in this section or the Act, it is unlawful for a person to ... possess ... (9) game or wildlife taken alive from the wild or (10) game or wildlife held captive or game or wildlife held in captivity or captive bred

---

1. 34 Pa.C.S.A. § 2307(a).

in another state." Also, 137.31(b) a person violating this subchapter will be subject to the penalties provided in 2307 of the Act (relating to unlawful taking or possession of game o[r] wildlife).

Order dated 11/21/03. This timely appeal followed.[2]

¶ 13 Two issues are raised on appeal:

A. Whether, based on the exception set forth in 34 Pa.C.S.A. § 2307(c), the trial court erred in convicting [Appellant] for violating 34 Pa.C.S.A. § 2307(a)[?]

B. Whether the trial court, in convicting [Appellant] for violating 34 Pa. C.S.A. § 2307(a) improperly applied 58 Pa.Code § 137.1[?].

Appellant's Brief at 6 (emphasis deleted). The essence of Appellant's arguments is that her possession of Nutkin is permitted pursuant to the language of 34 Pa.C.S.A. section 2307(c). Appellant contends that the trial court not only failed to consider this provision, but, rather convicted her for violating a provision of the Pennsylvania Code (58 Pa.Code section 137.1) with which she was not charged.

¶ 14 Our standard of review of a trial court's adjudication entered following a *de novo* trial on a summary offense has been summarized as follows:

[An appellate court's review of a] *de novo* trial on a summary offense is limited to whether the trial court committed an error of law and whether the findings of the trial court are supported by competent evidence. The adjudication of the trial court will not be disturbed on appeal absent a manifest abuse of discretion. An abuse of discretion exists when the trial court has rendered a judgment that is manifestly unreasonable, arbitrary, or capricious, has failed to apply the law, or was motivated by partiality, prejudice, bias, or ill will.

*Commonwealth v. Parks*, 768 A.2d 1168, 1171 (Pa.Super.2001) (citations and quotation marks omitted). Moreover, because the issues on appeal concern the interpretation of a statute, it is purely a question of law, over which our review is plenary. *R.M. v. Baxter*, 565 Pa. 619, 624, 777 A.2d 446, 449 (2001).

■ ¶ 15 This case concerns the interpretation of 34 Pa.C.S.A. section 2307, under which Appellant was charged and convicted. Section 2307 provides, in relevant part, as follows:

§ 2307. **Unlawful taking or possession of game or wildlife**

(a) **General rule.**-It is unlawful for any person to aid, abet, attempt or conspire to hunt for or take or possess, use, transport or conceal any game or wildlife unlawfully taken or not properly marked or any part thereof, or to hunt for, trap, take, kill, transport, conceal,

---

**2.** The Commonwealth Court of Pennsylvania is conferred with jurisdiction over appeals from criminal prosecutions brought pursuant to the Game and Wildlife Code. *Commonwealth v. Neitzel*, 451 Pa.Super. 1, 678 A.2d 369, 370 n. 2 (1996) (citing *Dickerson v. Commonwealth*, 138 Pa.Cmwlth. 141, 587 A.2d 379, 380–81 (1991)). *See also* 42 Pa.C.S.A. § 762(a)(2)(ii) (providing that the Commonwealth Court has jurisdiction over criminal proceedings for violations of regulatory statutes administered by Commonwealth agencies). However, because oral argument has already occurred and the parties have not challenged the Superior Court's jurisdiction, we will, in the interest of judicial economy, address the merits of the issues raised in the appeal. *Neitzel*, 678 A.2d at 370 n. 2. *See also* Pa.R.A.P. 741(a) (stating that "[t]he failure of an appellee to file an objection to the jurisdiction of an appellate court … shall … operate to perfect the appellate jurisdiction of such appellate court, notwithstanding any provision of law vesting jurisdiction of such appeal in another appellate court").

possess or use any game or wildlife contrary to the provisions of this title.

\* \* \*

**(c) Wild Birds and wild animals taken outside Commonwealth.**-Nothing in this title shall prohibit the possession, at any time, of wild birds or wild animals lawfully taken outside of this Commonwealth which are tagged and marked in accordance with the laws of the state or nation where the wild birds or wild animals were taken. It is unlawful to transport or possess wild birds or wild animals from another state or nation which have been unlawfully taken, killed or exported.

34 Pa.C.S.A. § 2307(a) and (c). "The basic tenet of statutory construction requires a court to construe the words of the statute according to their plain meaning." *Grom v. Burgoon,* 448 Pa.Super. 616, 672 A.2d 823, 825 (1996) "[W]ords and phrases contained in a statute shall be construed according to rules of grammar and according to their common and approved usage." *R.M.,* 565 Pa. at 626, 777 A.2d at 451; 1 Pa.C.S.A. § 1903(a). "When the words of a statute are clear and free from ambiguity the letter of it is not to be disregarded under the pretext of pursuing its spirit." *Id.* (citing Pa.C.S.A. § 1921(b)).

¶ 16 Our review of the language of section 2307 leads us to conclude that Appellant's interpretation of the statute is consistent with the plain meaning of the text. The language of section 2307 clearly and unambiguously provides that possession of wild animals in this Commonwealth is not prohibited where: (1) the wild birds or wild animals are lawfully taken[3] outside of this Commonwealth; and, (2) the wild birds or wild animals are tagged and marked in accordance with the laws of the state or nation where the birds or animals were taken.

∎ ¶ 17 In this instance the parties have stipulated that Nutkin is a wild animal within the meaning of this section. They have further stipulated that in the state of South Carolina the taking and domestication of squirrels is legal and that there are no provisions for tagging or marking animals taken, as contemplated in section (c) of the Pennsylvania statute. Thus, because it is agreed by both parties that Nutkin is a "wild animal", and that she was "taken" outside the Commonwealth in a lawful fashion, the first element of the exception set forth in Section 2307(c) has been established. For the exception in 2307(c) to apply, then it seems that Nutkin must have been tagged and marked in accordance with the laws of the state where she was taken. We then refer to the law of South Carolina to see what the requirements of marking and tagging are. As stated above, it was stipulated that there are no such marking and tagging requirements. Hence, the lack of tagging and marking *is* in "accordance with the laws of the state ... where the ... wild animals were taken." Accordingly, we find that both elements of Section 2307(c) have been satisfied and, as such, the exception applies here.

¶ 18 Nonetheless, the Commonwealth argues that this interpretation of Section 2307 is erroneous and it points to various sections of Title 58 of the Pennsylvania Code, which it claims prohibits possession of animals taken from the wild, no matter

---

**3.** The word "Take" in the context of the Game and Wildlife Code has been defined as: "[t]o harass, pursue, hunt for, shoot, wound, kill, trap, capture, possess or collect any game or wildlife, including shooting at a facsimile of game or wildlife, or attempt to harass, pursue, hunt for, shoot, wound, kill, trap, capture or collect any game or wildlife or aiding, abetting or conspiring with another person in that purpose." 34 Pa.C.S.A. § 102.

where the taking took place. The Commonwealth first points to 58 Pa.Code Sections 131.1 and 131.2 which explain that Title 34 of the Pennsylvania Consolidated Statutes (the Act), which embodies the Game and Wildlife Code, and Title 58 of the Pennsylvania Code are interrelated and shall be construed with reference to each other. Then the Commonwealth alludes to 58 Pa.Code section 137.1(a) which states "[i]t is unlawful for a person to import [and/or] possess ... (9) [g]ame or wildlife taken alive from the wild ... [or] (10) [g]ame or wildlife held in captivity or captive bred in another state" and section 137.31 which provides that, "[i]t is unlawful for a person to possess live wildlife taken from a wild state within this Commonwealth", with certain exceptions not relevant here. Thus, the Commonwealth concludes that to interpret 34 Pa.C.S.A. section 2307(c) as Appellant does would render Section 2307(c) and 58 Pa.Code Sections 137.1 and 137.31 incongruent. The difficulty with the Commonwealth's argument is that Section 137.1 specifically provides in subsection (a) the language "[u]nless otherwise provided in this section or the [A]ct, it is unlawful for a person to import, possess," etc. As stated above, the Act itself in 34 Pa.C.S.A. section 2307(c) does provide otherwise. It provides an exception to the otherwise blanket prohibition in section 2307(a) and the regulation.

¶ 19 The Commonwealth in further support of its argument points to 34 Pa.C.S.A. section 2163. Section 2163 provides that "[i]t is unlawful for any person to bring or, in any manner, to have transported into this Commonwealth from any other state or nation, any living game or wildlife... the importation of which is prohibited by the commission...." Thus, the Commonwealth contends that because 58 Pa.Code section 137.1 is a regulation of the commission, and it prohibits importation of

wildlife, Appellant is in violation of the regulation. While the regulation of the commission set forth in Section 137.1 on its face seems to prohibit all importation of wildlife, the regulation of the commission cannot conflict with an act of the General Assembly, such as 34 Pa.C.S.A. section 2307(c), which creates an exception. *See Commonwealth v. DeFusco*, 378 Pa.Super. 442, 549 A.2d 140, 145 (1988) (providing that "where ... there is an apparent conflict between a statute and a regulation promulgated thereunder, the statute must prevail"); *Lookenbill v. Garrett*, 340 Pa.Super. 435, 490 A.2d 857, 861 (1985) (same); *Wernersville State Hospital v. Peters*, 659 A.2d 67, 69–70 (Pa. Cmwlth.1995) (same).

■ ¶ 20 While our disposition of Appellant's first issue requires a reversal of the conviction, we believe Appellant's second issue also has merit. Rule 403 of the Pennsylvania Rules of Criminal Procedure provides, in relevant part:

Rule 403.   Contents of Citation

A.   Every citation shall contain:

* * *

(6) a citation of the specific section and subsection of the statute or ordinance allegedly violated, together with a summary of the facts sufficient to advise the defendant of the nature of the offense charged[.]

Pa.R.Crim.P. 403(A)(6). The citation in this case charges a violation of section 2307(a), and it is that charge which Appellant was on notice to defend against. The trial court's incorporation of 58 Pa.Code section 137.1(a) in its order charges a new offense in that this latter section prohibits the importation or possession of wildlife held in captivity without any exception for animals taken and marked and tagged in accordance with the law of state where

taken. It is obvious that 58 Pa.Code section 137.1(a) is a different offense from the one charged in Appellant's citation. Therefore, Appellant's conviction also must fail on this basis.

¶ 21 Accordingly, for the reasons set forth above, we must reverse the judgment of sentence and dismiss the citation.

¶ 22 Judgment of sentence reversed. Citation dismissed. Fines and costs, if paid, to be returned.