# Higbee v. Curea

C.P. of Lawerence County, No. 11099 2012.

*Breonna C. Frisk-Miller,* for plaintiff
*Susan M. Papa,* for defendant

PICCIONE, *J.,* March 18, 2013—Before the court for disposition is a petition to intervene filed on behalf of the maternal grandparents, John and Cathy Curea (hereinafter, "maternal grandparents"). A brief factual and procedural summary of this case is as follows:

The plaintiff, Jonathan Higbee (hereinafter, "father"), and the defendant, Candace Curea (hereinafter, "mother") are the natural parents of the minor child Jionni Curea, born July 22, 2012. Plaintiff initiated the within complaint for custody on September 19, 2012. Father was a minor child at the time this action was filed, and was therefore assisted by his mother, Colleen Higbee, in commencing this action. Shortly thereafter, on October 19, 2012, maternal grandparents filed a petition to intervene.

Following a custody conference before the custody officer on October 19, 2012, a temporary custody order was entered whereby mother was awarded primary physical custody, and father was awarded supervised partial custody rights every Sunday from 10:00 a.m. until 12:00 noon at mother's residence. Father was awarded additional weekly supervised visitation with the minor children as agreed upon by the parties. Legal custody is shared between mother and father. The parties again appeared before the custody officer on January 4, 2013 for a review conference. Following the January 4, 2013 conference, father's partial custody rights were expanded to provide father with increased visitation on the weekends, which would eventually result in father's

custodial time being unsupervised.

On January 31, 2013, this court held a hearing on maternal grandparents' petition to intervene. Following the hearing, this court issued a briefing schedule. Briefs have been filed on behalf of the respective parties, and the Petition to Intervene is now ripe for disposition.

It is well established that the court's primary concern in any custody proceeding is the best interests of the child, based on a consideration of all factors "that legitimately affect the child's physical, intellectual, moral and spiritual wellbeing." *Swope v. Swope*, 689 A.2d 264, 265 (Pa. Super. 1997). This determination is to be made on a case by case basis. *Myers v. DiDomenico*, 657 A.2d 956, 957 (Pa. Super. 1995).

With regard to a custody challenge by a third party, the Pennsylvania courts have expressed a strong preference for the rights of biological parents. In *Charles v. Stehlik*, 744 A.2d 1255 (Pa. 2000), the Supreme Court of Pennsylvania stated:

> In a custody contest between two biological parents, "the burden of proof is shared equally by the contestants...." Yet, where the custody dispute is between a biological parent and a third party, the burden of proof is not evenly balanced. In such instances, "the parents have a 'prima facie right to custody,' which will be forfeited only if 'convincing reasons' appear that the child's best interest will be served by an award to the third party. Thus, even before the proceedings start, the evidentiary scale is tipped, and tipped hard, to the

[biological] parents' side."

Id. at 1258 (citations and quotations omitted); see also *T.B. v. L.R.M.,* 753 A.2d 873 (Pa. Super.2000) (holding that biological parents have a prima facie right to custody over third persons) *aff'd,* 786 A.2d 913 (Pa. 2001).

A question of intervention, however, is a matter that is left up to the discretion of the trial court. *Nemirovsky v. Nemirovsky,* 776 A.2d 988, 991-992 (Pa. Super. 2001) (citing: *Wilson v. State Farm Mutual Auto. Ins. Co.,* 517 A.2d 944, 947 (Pa. 1986). Because persons other than the natural parents are considered third parties in any custody proceeding, *J.F. v. D.B., et al,* 897 A.2d 1261 (Pa. Super. 2006), maternal grandparents must first establish that they have standing in this action in order to intervene and subsequently challenge the natural parents' prima facie right to custody. *McDonald v. Sohn,* 762 A.2d 1101 (Pa. Super. 2000).

The Superior Court of Pennsylvania addressed the issue of intervention by grandparents in the case of *K.B. II v. C.B.F.,* 833 A.2d 767 (Pa. Super. 2003). *In C.B.F.,* the natural mother and natural father had one child during the course of their marriage. 833 A.2d at 769. The natural parents ultimately divorced. *Id.* Natural father had a history of drug and alcohol abuse, and natural mother was accused of abusing the minor child. *Id.* Paternal grandparents then petitioned to intervene in the ongoing custody dispute between the natural parents, which request was granted. *Id.* Following a custody trial, paternal grandparents were awarded primary physical custody of the minor child. *Id.* at 770. On appeal, natural mother challenged the trial court's

decision to permit paternal grandparents to intervene in the proceedings. *Id.*

In *C.B.F.*, the Superior Court ultimately determined that under 23 Pa.C.S.A. §5313[1] a grandparent has automatic standing to seek physical and legal custody of his or her grandchildren, regardless of whether there has been a prior determination of unfitness by the parent or dependency of the child. *Id.* at 775. In reaching its conclusion, the *C.B.F.* Court revisited a similar case recently issued by the Supreme Court of Pennsylvania: *R.M. v. Baxter,* 777 A.2d 446 (2000). *Id.*

In *Baxter*, the paternal grandmother filed a custody complaint after the minor child, T.M., was adjudicated dependent. Paternal grandmother based her claim for custody on the fact that she frequently visited and cared for T.M. at the request of T.M.'s natural parents. Paternal grandmother asserted that section 5313 of the Domestic Code clearly permitted grandparents to intervene in a custody proceeding. The Supreme Court agreed and determined that

> The unqualified language of [23 Pa.C.S.A. §5313] states, "A grandparent has standing to bring a petition for physical and legal custody of a grandchild." This clear and unambiguous pronouncement cannot be ignored or modified by the subsequent reference to whom the provision, as a whole, is intended to apply. It is well settled that words and phrases contained in a statute shall be construed according to rules of

---

1. Repealed by 2010, Nov. 23, P.L. 1106, No. 112, §1. Now 23 Pa.C.S.A. §5324.

grammar and according to their common and approved usage. *Commonwealth v. Burnsworth*, 669 A.2d 883 (Pa. 1995); 1 Pa.C.S. §1903(a). When the words of a statute are clear and free from ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit. *Id.* at §1921(b). The language providing that, "This subsection applies to a grandparent who...," refers to the requirements a grandparent must establish to prevail on the merits of the custody claim. This is evidenced by the fact that "this subsection" is entitled, "Physical and legal custody," rather than "Standing."

Id. at 626-27, 777 A.2d at 451.

This court acknowledges that the case law discussed above applies to section 5313 of the Domestic Code, which was repealed and replaced by Section 5324. Section 5324 provides:

The following individuals may file an action under this chapter for any form of physical custody or legal custody:

(1) A parent of the child.

(2) A person who stands in loco parentis to the child.

(3) A grandparent of the child who is not in loco parentis to the child:

(i) whose relationship with the child began either with the consent of a parent of the child or under a court order;

(ii) who assumes or is willing to assume

responsibility for the child; and

(iii)   when one of the following conditions is met:

> (A)   the child has been determined to be a dependent child under 42 Pa.C.S. Ch. 63 (relating to juvenile matters);

> (B) the child is substantially at risk due to parental abuse, neglect, drug or alcohol abuse or incapacity; or

> (C) the child has, for a period of at least 12 consecutive months, resided with the grandparent, excluding brief temporary absences of the child from the home, and is removed from the home by the parents, in which case the action must be filed within six months after the removal of the child from the home.

23 Pa.C.S.A. §5324.

The maternal grandparents base their petition to intervene on the assertion that they have achieved in loco parentis status as set forth at 23 Pa.C.S.A. §5324(2). The phrase in loco parentis embodies two ideas; first, the assumption of a parental status, and, second, the discharge of parental duties. *Morgan v. Smith*, 241 A.2d 531, 533 (Pa. 1968). Thus, a person's rights and liabilities arising out of an in loco parentis relationship are exactly the same as between parent and child without going through the formality of a legal adoption. *Spells v. Spells*, 378 A.2d 879, 882 (1977). However, in order for a

person to stand in loco parentis to a child, that party "must first assume parental status through some legally cognizable means." quoting *In re Adoption of W.C.K.,* 748 A.2d 223, 230 (Pa.Super. 1999). It is not necessary for the third party to have the express consent of the natural parent, but the third party must, at the very least, have an agreement by the natural parent to the placement of the child. *Silfies v. Webster,* 713 A.2d 639, 643 (Pa. Super. 1998).

The appellate courts have maintained that a third party may not obtain the status of in loco parentis in opposition to the wishes of a natural parent. *B.A. v. E.E.,* 741 A.2d 1227, 1329 (Pa. 1999); *Gradwell v. Strauser,* 610 A.2d 999, 1003 (Pa. Super. 1992). While the doctrine of in loco parentis establishes a basis for a third party to have standing in a child custody action, it also recognizes a family's need to protect itself from intruding third parties. *J.A.L. v. E.P.H.,* 682 A.2d 1314, 1219-20 (Pa. Super. 1996). Although there exists a presumption that a child's best interests are served by maintaining the family's privacy, such a presumption "must give way where the child has established strong psychological bonds with a person who, although not a biological parent, has lived with the child and provided care, nurture, and affection, assuming in the child's eye a stature like that of a parent." *Id.* Thus, where the child has established a strong relationship with a third party who has lived with the child and provided care, nurture and affection as well as acting in the child's eyes as a parent, a court can grant such a third party standing. *T.B. v. L.R.M.,* 786 A.2d 913, 916 (Pa. 2001)(quoting and

incorporating the decision and rationale set forth by the Superior Court in the case of *J.A.L. v. E.P.H.*, 682 A.2d 1314, 1319-20 (1996)).

The testimony and evidence at the January 31, 2013 hearing establishes that, since Jionni's birth, maternal grandparents have been very involved in Jionni's daily life. Jionni was born with serious health complications that required Jionni to be hospitalized for an extended time. Maternal grandparents frequently visited the hospital during this time to provide support to both Jionni, and his mother and father. When Jionni was released from the hospital he lived with mother at maternal grandparents' residence. Additionally, the court acknowledges that both mother and father are in high school, so maternal grandparents typically care for Jionni while his parents attend school.

Although father did file a custody complaint when Jionni was only two months old, the fact maternal grandparents assumed a substantial role in Jionni's life since birth is undisputed. This finding does not negotiate the fact that both mother and father have both been very involved in caring for Jionni, but rather acknowledges the fact that mother and father are very young parents who are not presently capable of caring for Jionni on a full time basis. Maternal grandparents have provided a significant amount of care, nurture and affection for Jionni thus far. Recognizing that Jionni is presently only seven monthly old, and any form of bond developed between the minor child and maternal grandparents is limited in nature, the court believes that to the extent possible maternal

grandparents have established a bond with the minor child.

For the foregoing reasons, the court determines that maternal grandparents have established in loco parentis status. Maternal grandparents petition to intervene is therefore granted.

## ORDER OF COURT

And now, this 18th day of March, 2013, with this matter being before the court for a hearing on a petition to intervene, filed on behalf of the maternal grandparents, John and Cathy Curea, with the plaintiff, Jonathan Higbee, appearing and being represented by Breonna C. Frisk-Miller, Esquire; the defendant, Candace Curea, appearing and being represented by Susan M. Papa, Esquire; and the petitioners, John and Cathy Curea, appearing and also being represented by Susan M. Papa, Esquire, and consistent with the attached opinion, the court hereby orders and decrees as follows:

1. Petitioner's request to intervene in this action is granted.

2. This case has previously been scheduled for a review conference on April 17, 2013.

3. Pending further order of court, the current custody order issued on January 10, 2013 shall remain in full force and effect.

4. The prothonotary is directed to serve a copy of this order of court and attached opinion, by personal service or regular mail, upon counsel of record.