J-A09028-18

2018 PA Super 229

| G.A.P. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| J.M.W. | : | |
| | : | |
| | : | No. 1694 WDA 2017 |
| v. | : | |
| | : | |
| | : | |
| S.J. AND R.J. | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: G.P. AND J.P., | : | |
| PATERNAL GRANDPARENTS | : | |

Appeal from the Order Entered October 10, 2017
In the Court of Common Pleas of Indiana County Civil Division at No(s):
No. 10862 C.D. 2016

BEFORE:  BOWES, J., DUBOW, J., and MURRAY, J.

OPINION BY DUBOW, J.:                    **FILED AUGUST 15, 2018**

Appellants, G.P. and J.P. ("Paternal Grandparents"), appeal from the

October 10, 2017 Order, which, *inter alia*, dismissed Paternal Grandparents'

Petition to Intervene after the trial court concluded that Paternal Grandparents

did not have standing to pursue custody rights of their grandchild, J.P.

("Child").  After careful review, we hold that notwithstanding a child's custodial

situation, the Custody Act grants standing to grandparents to file for any form

of physical or legal custody when their grandchild is substantially at risk due

to the parental behaviors stated in 23 Pa.C.S. § 5324(3)(iii)(B). Accordingly,

we reverse.

The subject of the instant custody dispute is now 7-year-old Child, who currently resides with Appellees S.J. and R.J. ("Maternal Great-Grandparents"). Child's parents, Appellees G.A.P. ("Father") and J.M.W. ("Mother"), both have a history of drug abuse; Father also has a criminal history. Child has lived with Maternal Great-Grandparents on and off throughout his entire life, and continuously since October 2015.

On May 2, 2016, Father filed a Complaint for Custody. On July 26, 2016, Mother and Father entered a Custody Consent Order, which granted shared legal custody to both parents, primary physical custody to Mother, and partial physical custody to Father.

On August 1, 2016, Maternal Great-Grandparents filed a Petition for Emergency Custody alleging that Child had been residing with them continuously since October 2015 and that Child was not safe during periods of partial physical custody with Father, including allegations that Child reported inappropriate sexual acts between Father and Child. Maternal Great-Grandparents also filed a Petition to Intervene in Child's custody matter.

On the same day, the trial court granted Maternal Great-Grandparents' Petition for Emergency Custody, awarded sole physical custody of Child to Maternal Great-Grandparents, vacated the July 26, 2016 Custody Consent Order, suspended Father's partial physical custody, and scheduled a hearing.

On August 15, 2016, per agreement of the parties, the trial court granted Maternal Great-Grandparents' Petition to Intervene, upheld the August 1, 2016 Custody Order, awarded Mother supervised physical custody

at Maternal Great-Grandparents' discretion, and scheduled a custody mediation conference.

On December 19, 2016, following a custody mediation conference at which Mother did not appear, Maternal Great-Grandparents and Father entered a Custody Consent Order. The Order awarded Maternal Great-Grandparents and Father shared legal custody, Maternal Great-Grandparents primary physical custody, and Father supervised physical custody that could be modified by recommendation of the CARE Center, the organization that was responsible for supervising visits.

On May 2, 2017, Maternal Great-Grandparents filed a Petition for Special Relief, which alleged that Father had relapsed in his drug use, requested that Father submit to drug screens, and requested that Father's visitation be limited to supervised physical custody of Child.

On May 5, 2017, the trial court suspended Father's unsupervised partial physical custody of Child, ordered supervised physical custody, and scheduled a hearing.

Most relevant to this appeal, on June 29, 2017, Paternal Grandparents filed a Petition to Intervene requesting partial physical custody of Child. In the Petition, Paternal Grandparents asserted that they had standing to pursue physical custody of Child because "the child is substantially at risk due to parental abuse, neglect, drug or alcohol abuse or incapacity" pursuant to 23 Pa.C.S. § 5324(3)(iii)(B). On July 5, 2017, Maternal Great-Grandparents filed Preliminary Objections asserting that Paternal Grandparents did not have

standing to pursue physical custody of Child pursuant to 23 Pa.C.S. § 5324(3)(iii)(B) because Child was **not** currently "substantially at risk" since Maternal Great-Grandparents had primary physical custody of Child.

On October 10, 2017, the trial court sustained Maternal Great-Grandparents' Preliminary Objections and dismissed Paternal Grandparents' Petition to Intervene for lack of standing.

Paternal Grandparents timely appealed.[1] Paternal Grandparents and the trial court complied with Pa.R.A.P. 1925.

Paternal Grandparents raise the following issue on appeal: "Whether the [t]rial [c]ourt erred in denying Petitioners, Paternal Grandparents, standing to pursue custody rights of [Child]." Paternal Grandparents' Brief at 7.

An issue regarding standing is a threshold issue that is a question of law. *K.W. v. S.L.*, 157 A.3d 498, 504 (Pa. Super. 2017). Moreover, the interpretation and application of a statute is also a question of law. *C.B. v. J.B.,* 65 A.3d 946, 951 (Pa. Super. 2013). As with all questions of law, we must employ a *de novo* standard of review and a plenary scope of review to determine whether the court committed an error of law. *Id.*

---

[1] The trial court's October 10, 2017 Order is an appealable collateral order pursuant to Pa.R.A.P. 313. *See K.C. v. L.A.*, 128 A.3d 774, 778-81 (Pa. 2015) (holding that an order denying intervention in a child custody case due to a lack of standing meets all three prongs of the collateral order doctrine).

When interpreting a statute, this court is constrained by the rules of the Statutory Construction Act of 1972 (the "Act"). 1 Pa.C.S. §§ 1501-1991. The Act makes clear that the goal in interpreting any statute is to ascertain and effectuate the intention of the General Assembly while construing the statute in a manner that gives effect to all its provisions. *See* 1 Pa.C.S. § 1921(a). The Act provides: "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b). Moreover, it is well settled that "the best indication of the General Assembly's intent may be found in a statute's plain language." *Cagey v. Commonwealth*, 179 A.3d 458, 462 (Pa. 2018). Additionally, we must presume that the General Assembly **does not** intend a result that is absurd, impossible of execution, or unreasonable and **does** intend to favor the public interest over any private interest. *See* 1 Pa.C.S. § 1922(1) and (5) (emphasis added).

Instantly, this court must interpret a section of the Child Custody Act, 23 Pa.C.S. §§ 5321-5340, which governs all custody proceedings commenced after January 24, 2011. *E.D. v. M.P.,* 33 A.3d 73, 77 (Pa. Super. 2011). The Child Custody Act provides standing to third parties seeking custody under certain circumstances. *See* 23 Pa.C.S. § 5324 (effective July 3, 2018). At issue in this appeal is Section 5324(3) pertaining to grandparents, great-

- 5 -

grandparents, and persons "*in loco parentis*."[2]  ***See*** 23 Pa.C.S. § 5324(3); 23 Pa.C.S. § 5325.  Section 5324(3) provides standing to a grandparent of the child, who is not *in loco parentis* to the child:

> (i) whose relationship with the child began either with the consent of a parent of the child or under a court order;
>
> (ii) who assumes or is willing to assume responsibility for the child; and
>
> (iii) when one of the following conditions is met:
>
>> (A) the child has been determined to be a dependent child under 42 Pa.C.S. Ch. 63 (relating to juvenile matters);
>>
>> (B) the child is substantially at risk due to parental abuse, neglect, drug or alcohol abuse or incapacity; or
>>
>> (C) the child has, for a period of at least 12 consecutive months, resided with the grandparent, excluding brief temporary absences of the child from the home, and is removed from the home by the parents, in which case the action must be filed within six months after the removal of the child from the home.

23 Pa.C.S. § 5324(3).

---

[2] "The term *in loco parentis* literally means 'in the place of a parent.'  A person stands *in loco parentis* with respect to a child when he or she assumes the obligations incident to the parental relationship without going through the formality of a legal adoption. The status of *in loco parentis* embodies two ideas; first, the assumption of a parental status, and, second, the discharge of parental duties."  ***K.W., supra*** at 504-05 (internal citations and quotation marks omitted).

Instantly, Maternal Great-Grandparents concede that Paternal Grandparents are the grandparents of Child, have a relationship with Child that began with the consent of a parent, and are willing to assume responsibility for Child pursuant to 23 Pa.C.S. § 5324(3)(i) and (ii).  ***See*** Preliminary Objections, dated July 5, 2017.  Therefore, the only question is whether "the child is substantially at risk due to parental abuse, neglect, drug or alcohol abuse or incapacity" pursuant to 23 Pa.C.S. § 5324(3)(iii)(B).

In their Brief, Paternal Grandparents aver that the trial court erred in its interpretation of the statute.  They disagree with the trial court's conclusion that Child is not "substantially at risk" because Maternal Great-Grandparents have physical custody of Child, and argue that the plain language of Section 5324 specifically refers to risks "**due to parental** abuse, neglect, drug or alcohol abuse or incapacity" without reference to the custodial situation of Child.  Paternal Grandparents' Brief at 15-16 (emphasis added).  Paternal Grandparents also argue that the purpose of the statute is to grant grandparents standing in custody matters, not "to create a situation where grandparents are essentially in a race to file to receive standing" because the grandparent who files first is the only one able to obtain standing in a custody matter.  ***Id.*** at 11.  We agree.

Section 5324(3)(iii)(B) confers standing upon grandparents in cases where "the child is substantially at risk **due to parental** abuse, neglect, drug or alcohol abuse or incapacity," when the requirements of Section 5324(3)(i) and (ii) are also met.  23 Pa.C.S. § 5324(3)(iii)(B) (emphasis added).  The

words of this provision are clear and unambiguous, and they do not make an exception for the custodial situation of a child. Simply, the plain language of the statute confers standing to grandparents when a child is substantially at risk due to ongoing parental behaviors.

In this case, the trial court previously determined that the conditions necessary under Section 5324(3)(iii)(B), namely ongoing parental behaviors that would put Child at substantial risk, were present in order to grant standing to Maternal Great-Grandparents. Paternal Grandparents' Brief at 19. Since that determination, there has been no change in the substantial risk that the parents created.

In an analogous case, **Martinez v. Baxter,** 725 A.2d 775, 778 (Pa. Super. 1999), **aff'd sub nom. R.M. v. Baxter ex rel. T.M.**, 777 A.2d 446 (Pa. 2001), this Court interpreted a previous version of the statute, which provided a grandparent standing to pursue custody if that grandparent "deem[ed] it necessary to assume responsibility for a child who is substantially at risk due to parental abuse, neglect, drug or alcohol abuse or mental illness." This Court held that the fact that a child had been declared dependent and placed in custody of the state, thus alleviating immediate safety concerns, did not negate the grandmother's standing to seek custody. **Id.** at 778. We concluded that it was "of no moment" that child had only been adjudicated dependent and parental rights were not terminated or relinquished because it was still possible for a parent to seek reunification with the child. **Id.** As a

result, the parents still created an ongoing risk to the child and the grandmother had standing. *Id.*

Applying this Court's reasoning in *Martinez, supra*, to the instant case, it is irrelevant for purposes of standing that the trial court has already granted custody to Maternal Great-Grandparents. Since parental rights have not been terminated or relinquished, it is possible for either parent to seek custody of Child. This possibility creates an ongoing risk to Child. *See Martinez, supra*, at 778.

Moreover, we must presume that the General Assembly does not intend a result that is absurd, impossible of execution, or unreasonable and does intend to favor the public interest over any private interest. *See* 1 Pa.C.S. § 1922(1) and (5). It would most certainly be absurd, unreasonable, and against public interest to create a race to file a custody petition and divest one grandparent of his or her right to custody because another grandparent filed a petition first. Rather, the trial court should have the opportunity to determine which grandparent can best serve the child's needs. The trial court must consider in its analysis many custodial factors, including the impact of moving the child from one grandparent to another one. The trial court, however, should have the opportunity to consider all custodial options for the child and this interpretation of the statute gives the trial court the discretion to place the child with the grandparent best suited to care for the child and does not limit the trial court's decision to the grandparent who filed first.

Therefore, we conclude that regardless of a child's custody status, the Custody Act grants standing to grandparents to file for any form of physical or legal custody when their grandchild is substantially at risk due to "parental abuse, neglect, drug or alcohol abuse or incapacity" pursuant to 23 Pa.C.S. § 5324(3)(iii)(B). Thus, the trial court erred as a matter of law in sustaining Maternal Great-Grandparents' Preliminary Objections, concluding that Paternal Grandparents did not have standing to pursue custody of Child, and dismissing Paternal Grandparents' Petition to Intervene. Accordingly, we reverse the trial court's October 10, 2017 Order and remand this case for the trial court to promptly hold a hearing on Paternal Grandparents' Petition to Intervene.

Order reversed. Case remanded. Jurisdiction relinquished.

Judge Murray joins the opinion.

Judge Bowes files a concurring opinion.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/15/2018

- 10 -