J-S57002-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: L.C., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: E.D., FATHER | |
| | No. 1053 EDA 2015 |

Appeal from the Order Entered March 12, 2015
In the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-DP-0001912-2014
FID-51-FN-002124-2010

| | |
|---|---|
| IN THE INTEREST OF: S.T.S.D., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: E.D., FATHER | |
| | No. 1054 EDA 2015 |

Appeal from the Decree March 12, 2015
In the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-AP-0000152-2013
CP-51-DP-0000855-2010
FID-51-FN-002124-2010

BEFORE:  MUNDY, J., OTT, J., and STABILE, J.

MEMORANDUM BY MUNDY, J.:                **FILED NOVEMBER 17, 2015**

Appellant, E.D. (Father), appeals from the March 12, 2015 order adjudicating dependent his daughter, L.C.[1]; and the March 12, 2015 decree involuntarily terminating his parental rights, and changing the permanency goal to adoption, with regard to his son, S.T.S.D.[2] After careful review, we affirm.

The certified record reveals the following factual and procedural history. L.C. and S.T.S.D. are the biological children of Father and V.F.C. (Mother). On October 23, 2010, Mother left S.T.S.D., along with his half-sisters, N.C., age three, and S.C., age one, in the care of Father while she was at work.[3] N.T., 6/20/11, at 39, 74, 80. S.C. died that day while in Father's care. The medical examiner ruled her death a homicide as a result of multiple severe blunt impact soft tissue injuries that caused fat emboli to develop in her lungs. *Id.* at 38, 46-48, 55. The medical examiner explained that, upon performing the autopsy, he found old and new injuries on S.C.'s body,[4] and that the fat emboli would have developed "within a day or two … from the onset of the injury."[5] *Id.* at 44-45, 62.

_____

[1] L.C. was born in January 2014.

[2] S.T.S.D. was born in August 2010.

[3] Neither N.C. nor S.C. was a biological child of Father.

[4] Besides the severe soft tissue injuries found on a significant portion of S.C.'s body, the medical examiner also found multiple fractured ribs, some
*(Footnote Continued Next Page)*

On the date of S.C.'s death, S.T.S.D. was two months old. He was placed, along with his half-sister, N.C., with his maternal grandfather, where he remained at the time of the subject proceedings. Trial Court Opinion (S.T.S.D.), 5/18/15, at 1.[6] On October 28, 2010, the trial court issued a shelter care order, which also included a provision ordering Father not to have any contact with S.T.S.D. On November 8, 2010, the trial court adjudicated S.T.S.D. dependent. *Id.* at 2.

Following a permanency review hearing in S.T.S.D.'s dependency matter on June 20, 2011, the trial court issued an aggravated circumstances order finding, based on the injuries and death of S.C., that aggravated circumstances and child abuse existed as to Father and Mother. *Id.* Further, the trial court ordered "that no reasonable efforts were to be made to … reunify S.[T.S.]D. with [ ] [F]ather." *Id.*

---

*(Footnote Continued)* ———————————

of which occurred recently, and others that he opined occurred a maximum of five to seven weeks before the date of death. N.T., 6/20/11, at 44-45.

[5] Father pleaded "no contest" to the criminal charge of endangering the welfare of a child. Father served a term of incarceration and probation, although the record does not reveal the term length. N.T., 3/12/15, at 22. Based on a stay-away order issued by the criminal court, described below, we infer that Father was released from prison in early 2012.

[6] Instantly, the trial court has authored two separate opinions, each dated May 18, 2015. We have distinguished the opinions by the child it references. Further, the trial court opinions do not contain pagination. Therefore, we have supplied corresponding page numbers for each page.

Nevertheless, on June 20, 2011, the trial court also issued a permanency review order directing monthly visits between Father and S.T.S.D., then ten months old, at the prison where Father was incarcerated. Permanency Review Order, 6/20/11. A total of three visits occurred, during which S.T.S.D. was accompanied by a social worker from the foster care agency, John Mack, who testified that the visits were "traumatic for [S.T.S.D.]." N.T., 3/12/15, at 28. There were no additional prison visits ordered due to Mr. Mack's recommendation. *Id.* at 28-30.

Thereafter, at some time before April 19, 2012, a criminal stay-away order was issued prohibiting Father from contact with the family. By a permanency review order dated April 19, 2012, the trial court denied Father visits with S.T.S.D. due to the criminal stay-away order. *See* Permanency Review Order, 4/19/12. Further, on August 8, 2013, the trial court issued an order, effective for one year, in the dependency matters of S.T.S.D. and another child of Father and Mother, S., prohibiting Father from having any contact. *See* Order, 8/8/13. By permanency review order dated January 7, 2015, the trial court included a directive for Father to stay away from S.T.S.D. *See* Order, 1/7/15.

L.C. was born more than three years after S.C.'s death, in January 2014. In August 2014, L.C. was removed from Mother's care due to Father being found in her home in violation of the stay-away order. N.T., 3/12/15,

at 47-51.  L.C. resides in a foster home with two of Mother's other children, S. and D.  *Id.* at 46, 67.

On March 13, 2013, the Philadelphia Department of Human Services, Children and Youth Division (DHS), filed a petition for the involuntary termination of Father's parental rights and a petition for a goal change to adoption with respect to S.T.S.D.  On August 13, 2014, DHS filed a petition for dependency with respect to L.C.

A combined hearing on all of the petitions occurred on March 12, 2015. With respect to the involuntary termination and goal change petitions, the following witnesses testified: Courtney Ransome, DHS caseworker; Father, who by this time had completed his criminal sentence related to the death of S.C.; John Mack, social worker at Friendship House; and J.C., the maternal grandfather of S.T.S.D.  In addition, the trial court admitted into evidence the notes of testimony from the hearing on June 20, 2011, in S.T.S.D.'s dependency matter, during which the following witnesses testified: Gary Collins, M.D., an assistant medical examiner with the Philadelphia Medical Examiner's Office; Jade Powell, the DHS caseworker; Mother; and Father. With respect to the dependency petition, the DHS caseworker, Courtney Ransome, testified.

On March 12, 2015, the trial court involuntarily terminated Father's parental rights to S.T.S.D. pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5),

(8), and (b), and changed the child's goal to adoption.[7]  On the same date, the trial court adjudicated L.C. dependent.[8]  On April 8, 2014, Father filed timely notices of appeal and concise statements of errors complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(a)(2)(i), which this Court consolidated *sua sponte*.  **See generally** Pa.R.A.P. 513. On May 18, 2015, the trial court filed opinions relating to the appeals pursuant to Rule 1925(a).

On appeal, Father raises the following issues for our review.

> 1. Did the [t]rial [c]ourt err in terminating Father's parental rights to S.[T.S.]D. and changing his goal to adoption where the court inappropriately admitted into evidence the medical examiner's report[?]
>
> 2. Did the [t]rial [c]ourt err in terminating Father's parental rights to S.[T.S.]D. and changing his goal to adoption where [DHS] did not prove by clear and convincing evidence that Father had not relieved the circumstances which brought the child into care[?]
>
> 3. Did the [t]rial [c]ourt err in changing S.[T.S.]D.'s goal to adoption where there is not clear and convincing evidence that Father has evidenced a settled purpose of relinquishing parental claim to the child or had refused or failed to perform parental duties as Father was prevented from contact with S.[T.S.]D. by Court Order[?]
>
> 4. Did the [t]rial [c]ourt err in terminating Father's parental rights to S.[T.S.]D. as there was insufficient

---

[7] Mother voluntarily relinquished her parental rights to S.T.S.D. on September 1, 2014.

[8] Mother did not contest the dependency petition filed with respect to L.C.

evidence to break the bond the child shared with Father where there was not clear and convincing evidence that the child would not be harmed by the termination[?]

5. Did the [t]rial [c]ourt err as a matter of law and abuse its discretion when it terminated Father's parental rights to S.[T.S.]D. and changed the child's goal to adoption[?]

6. Did the [t]rial [c]ourt err in adjudicating L.C. dependent where the court only used prognostic evidence of prior court findings in making the determination and [DHS] failed to present evidence that Father was unable to safely care for his child at the time of the hearing?

7. Did the [t]rial [c]ourt err in adjudicating L.C. dependent where the [c]ourt inappropriately considered the involuntary termination of Father's parental rights to another child, when that termination was subject to appeal?

8. Did the [t]rial [c]ourt err in adjudicating L.C. dependent where the testimony did not support the facts alleged in the [d]ependency [p]etition?

9. Did the [t]rial [c]ourt err as a matter of law and abuse its discretion when it adjudicated L.C. dependent?

Father's Brief at 6.[9]

_____

[9] In his brief, Father has failed to divide the argument section "into as many parts as there are questions to be argued" in contravention of Pa.R.A.P. 2119(a). In addition, Father has failed to include any discussion and analysis of pertinent authority related to his issues on the goal change order. Therefore, Father has waived his claims regarding that order. **See Giant Food Stores, LLC v. THF Silver Spring Dev., L.P.**, 959 A.2d 438, 444 (Pa. Super. 2008) (holding "[t]he Rules of Appellate Procedure state unequivocally that each question an appellant raises is to be supported by

*(Footnote Continued Next Page)*

We begin with our review of the involuntary termination decree, to which we apply the following legal principles.

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S.A. §§ 2101-2938, which requires a bifurcated analysis.

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the

*(Footnote Continued)* ⎯⎯⎯⎯⎯⎯⎯⎯

discussion and analysis of pertinent authority. Failure to do so constitutes waiver of the claim[]") (citations and quotation marks omitted).

needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted). The burden is upon the petitioner to prove by clear and convincing evidence that the asserted statutory grounds for seeking the termination of parental rights are valid. *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009).

Instantly, we conclude that the trial court properly terminated Father's parental rights pursuant to Section 2511(a)(2) and (b), which provide as follows.[10]

**§ 2511. Grounds for involuntary termination**

**(a) General Rule**.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

…

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse,

---

[10] This Court need only agree with any one subsection of 23 Pa.C.S.A. § 2511(a), along with Section 2511(b), in order to affirm the termination of parental rights. *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). Therefore, in light of our disposition as to Section 2511(a)(2), we need not consider Father's arguments with respect to Section 2511(a)(1), (5) and (8).

neglect or refusal cannot or will not be remedied by the parent.

…

**(b) Other considerations**.--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(2), (b). "The grounds for termination [of parental rights under Section 2511(a)(2),] due to parental incapacity that cannot be remedied are not limited to affirmative misconduct. To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties." *In re A.L.D.*, 797 A.2d 326, 337 (Pa. Super. 2002) (internal citations omitted).

With respect to Section 2511(b), the requisite analysis is as follows.

Subsection 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. In *In re C.M.S.*, 884 A.2d 1284, 1287 (Pa. Super. 2005), this Court stated, "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." In addition, we instructed that the trial court must also discern the nature and status of the parent-child bond, with utmost

- 10 -

attention to the effect on the child of permanently severing that bond. **_Id_**. However, in cases where there is no evidence of a bond between a parent and child, it is reasonable to infer that no bond exists. **_In re K.Z.S._**, 946 A.2d 753, 762-63 (Pa. Super. 2008). Accordingly, the extent of the bond-effect analysis necessarily depends on the circumstances of the particular case. **_Id_**. at 763.

**_In re Adoption of J.M._**, 991 A.2d 321, 324 (Pa. Super. 2010).

On appeal, the crux of Father's argument with respect to Section 2511(a)(2) is that he was limited in his ability to provide parental care for S.T.S.D. because of the stay-away orders and because DHS did not provide reunification services. Specifically, Father argues the following.

> [He] did everything in his power … to be reunified with his child without any assistance from or cooperation with [DHS]. Father was limited in what he could do as there was a stay-away order during his incarceration and parole, as well as by DHS not offering Father any assistance or cooperation in his attempts to reunify with S.[T.S.]D. Father completed parenting classes and anger management classes despite never being offered any services by DHS. Father has also actively engaged in therapy both while incarcerated and after his release. Father also tried to deliver gifts and clothing to S.[T.S.]D. through his mother, however they were sometimes rejected by the family caring for S.[T.S.]D.

Father's Brief at 12.

In its Rule 1925(a) opinion, the trial court reasoned that Father's conduct warranted termination under Section 2511(a)(2) because the stay-away order was issued due to Father's own conduct, making him unable to provide essential parental care, control, or subsistence to S.T.S.D. **_See_**

Trial Court Opinion (S.T.S.D.), 5/18/15, at 4. The stay-away order "was issued against [F]ather due to his role in the death of [S.C.]" *Id.* at 3. Further, the trial court "found by clear and convincing evidence, child abuse against [F]ather, and ordered no reasonable efforts be made to preserve the family." *Id.* at 4. The trial court relied on our decision in *In re A.D.*, 93 A.3d 888 (Pa. Super. 2014), where we affirmed the order involuntarily terminating the father's parental rights to his three children pursuant to Section 2511(a)(2). In *A.D.*, as in this case, there was a no-contact order preventing the father from communicating with the children and relieving the agency from providing reunification services. This Court held that "[t]he instant scenario, where a no-contact order renders Father incapable of performing his parental duties, is analogous to the situation encountered by parents subject to long-term imprisonment." *A.D.*, *supra* at 896.

We explained that our Supreme Court, in *In re Adoption of S.P.*, 47 A.3d 817 (Pa. 2012), held as follows.

> [I]ncarceration is a factor, and indeed can be a determinative factor, in a court's conclusion that grounds for termination exist under § 2511(a)(2) where the repeated and continued incapacity of a parent due to incarceration has caused the child to be without essential parental care, control or subsistence and that the causes of the incapacity cannot or will not be remedied.

*A.D.*, *supra* at 897, *citing id.* at 828. In *A.D.*, we then made the following conclusion.

> Just as our Supreme Court discussed a parent's incapacity relative to long-term incarceration in [**S.P.**], parental incapacity caused by a no-contact order is not only relevant to a court's conclusion that grounds for termination exist under § 2511(a)(2), but where, as here, the order is required to protect the children from further sexual abuse at the hands of the excluded parent, we find that it is dispositive.
>
> [The f]ather's repeated behaviors and his failure to be present for his children due to the no-contact order has caused the children to be without essential parental care, control, or subsistence necessary for their physical and mental well-being. Notwithstanding Father's moderate compliance with the few requirements [the agency] established for him, the conditions and causes of his parenting incapacity cannot be remedied as long as the no-contact order remains in place. We agree with the court's refusal to put on hold the need for consistent parental care and stability of [the children] simply because [the f]ather must abide by the no-contact order that was entered for their safety. Thus, we reject [the f]ather's premise that the trial court erred in terminating his parental rights based upon his inability to remedy his parental incapacity.

*Id.*

Likewise, in the instant matter, we discern no abuse of discretion by the trial court in finding parental incapacity on the part of Father due to the stay-away orders, which were required to protect S.T.S.D. from the same or similar fate of his half-sister, S.C. The record demonstrates that stay-away orders have been in effect continually since Father's release from prison. Father's inability to be present for S.T.S.D. has caused the child to be without essential parental care, control, or subsistence necessary for his physical and mental well-being. Further, the conditions and causes of

Father's parenting incapacity cannot be remedied as long as the stay-away order remains in place.

To the extent Father argues he was impeded in his ability to provide essential parental care, control, or subsistence to S.T.S.D. because DHS did not provide him with reunification services, we will not disturb the termination decree on this basis. **See** Father's Brief at 12. Our Supreme Court, in **In re D.C.D.**, 105 A.3d 662 (Pa. 2014), held that neither Section 2511(a)(2) nor 2511(b) "requires a court to consider the reasonable efforts provided to a parent prior to termination of parental rights." **Id.** at 672. As such, we conclude that the trial court did not abuse its discretion in terminating Father's parental rights pursuant to Section 2511(a)(2). **See A.L.D.**, **supra**.

With respect to Section 2511(b), the trial court found that S.T.S.D. "would not suffer any irreparable emotional harm if [F]ather's parental rights were terminated." Trial Court Opinion (S.T.S.D.), 5/18/15, at 5. The trial court explained as follows.

> The DHS social worker testified that she had never seen any evidence of a bond between the child and [F]ather. [F]ather was never able to bond with the child because, due to his own conduct, a stay away order was issued against him on behalf of the child when the child was two and one-half months old. Furthermore, the agency social worker testified that when the child did visit the [F]ather at the prison [ ] the child was "traumatized." Moreover, the social worker "basically had to force" S.[T.S.]D. to go to [F]ather. Lastly, the child has not asked to see his father again.

> Additionally, the child looks to the maternal grandfather as the person who keeps him safe. … The agency and the DHS social worker[] testified that the child and the maternal grandfather share a primary parental bond.

*Id.* (citations to record omitted).

The testimony of the DHS caseworker, Ms. Ransome, and the Friendship House foster agency social worker, Mr. Mack, support the trial court's findings. Indeed, there is no evidence of a bond of any kind between S.T.S.D. and Father. The record overwhelmingly demonstrates that S.T.S.D.'s developmental, physical, and emotional needs and welfare will be served by terminating Father's parental rights. Therefore, the trial court did not abuse its discretion in terminating Father's parental rights pursuant to Section 2511(b). *See J.M.*, *supra*.

We next turn to Father's argument regarding the medical examiner's report with respect to S.C.'s injuries and cause of death in 2010, which he alleges the trial court erroneously admitted into evidence in the subject proceedings. Father's Brief at 10-11. In his brief, Father baldly asserts that the medical examiner was available to testify, and therefore pursuant to 42 Pa.C.S.A. § 5934, the trial court erred in admitting the medical examiner's report.

Upon review, however, we note that Father has failed to develop this argument. As previously noted, Rule 2119 requires that the "argument shall be divided into as many parts as there are questions to be argued" and

include "such discussion and citation of authorities as are deemed pertinent." Pa.R.A.P. 2119(a). "[W]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived." **Umbelina v. Adams**, 34 A.3d 151, 161 (Pa. Super. 2011), *appeal denied*, 47 A.3d 848 (Pa. 2012), *quoting* **In re W.H.**, 25 A.3d 330, 339 (Pa. Super. 2011), *appeal denied*, 24 A.3d 364 (Pa. 2011). Therefore, Father's hearsay claim is waived.

Next, we review the order adjudicating L.C. dependent, pursuant to the following standard.

> [T]he standard of review in dependency cases requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or conclusions of law. Accordingly, we review for an abuse of discretion.

**In re R.J.T.**, 9 A.3d 1179, 1190 (Pa. 2010).

A "dependent child" is defined as a "child" who

> is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals. A determination that there is a lack of proper parental care or control may be based upon evidence of conduct by the parent, guardian or other custodian that places the health, safety or welfare of the child at risk….

42 Pa.C.S.A. § 6302.

- 16 -

A dependency hearing is a two-stage process. The first stage requires the trial court to hear evidence and to determine by clear and convincing evidence whether the child is dependent pursuant to the standards set forth in section 6302. *In re A.B.*, 63 A.3d 345, 349 (Pa. Super. 2013). If it finds that the child is dependent, the trial court may move to the second stage, in which it must make an appropriate disposition based upon an inquiry into the best interests of the child. *In re L.C.*, *II*, 900 A.2d 378, 381 (Pa. Super. 2006). Clear and convincing evidence has been defined as testimony that is "so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear determination, without hesitancy, of the truth of the precise facts at issue." *A.B.*, *supra* at 349.

This Court has defined "proper parental care" as "that care which (1) is geared to the particularized needs of the child and (2) at a minimum, is likely to prevent serious injury to the child." *In the Matter of C.R.S.*, 696 A.2d 840, 845 (Pa. Super. 1997).

Instantly, the trial court adjudicated L.C. dependent based on the order of June 20, 2011, finding aggravating circumstances and child abuse in S.T.S.D.'s dependency case, as a result of S.C.'s injuries and cause of death. *See* Trial Court Opinion (L.C.), 5/18/15, at 1. As such, the trial court found that the "previous conduct of [F]ather placed [L.C.] at imminent risk." *Id.* In addition, in adjudicating L.C. dependent, the trial court found relevant its decision to involuntarily terminate Father's parental rights to S.T.S.D. *Id.* at

2. Finally, the trial court adjudicated L.C. dependent based on the stay-away order in effect against Father with respect to S.T.S.D. *Id.*

On appeal, Father argues that the trial court erred in adjudicating L.C. dependent "largely based on Father's involuntary termination of parental rights to S.[T.S.]D. The termination of Father's parental rights was ordered on the same day as L.C. was adjudicated dependent and was subject to appeal. As such[,] it was improper to adjudicate L.C. dependent based on an involuntary termination that could be appealed." Father's Brief at 16 (internal citation omitted).

We observe that Section 6302 of the Juvenile Act provides ten definitions of a "dependent child." With respect to the relevance of an involuntary termination decree, Section 6302 provides that a "dependent child" is a child who "is born to a parent whose parental rights with regard to another child have been involuntarily terminated under 23 Pa.C.S. § 2511 (relating to grounds for involuntary termination) within three years immediately preceding the date of birth of the child and conduct of the parent poses a risk to the health, safety or welfare of the child." 42 Pa.C.S. § 6302. In this case, because the termination decree relating to S.T.S.D. did not occur within three years immediately preceding L.C.'s birth, the trial court improperly relied on the decree in adjudicating L.C. dependent. Nevertheless, we conclude that the trial court's reliance on the termination decree was harmless in that the record evidence supports the court's

determination that L.C. is a "dependent child" because she "is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for h[er] physical, mental, or emotional health, or morals." 42 Pa.C.S.A. § 6302. *See In re M.T.*, 607 A.2d 271, 281 (Pa. Super. 1992) (recognizing that not all errors constitute reversible error, and that a party must prove an error was harmful to warrant relief) (citations omitted). For the reasons that follow, we conclude the trial court did not err in adjudicating L.C. dependent.

Father argues in the alternative that the trial court erred in adjudicating L.C. dependent as follows.

> The [t]rial [c]ourt also relied on Father's previous conduct. Specifically the [t]rial [c]ourt mentions that Father's conduct resulted in the death of one of L.C.'s siblings. Father was never criminally convicted for the death of L.C.'s sibling. Father did plead no contest to Endangering the Welfare of a Child. However, even with this conviction, Father could still provide the proper parental care and control for L.C., if it was demonstrated that he has been sufficiently rehabilitated. At the time of the adjudicatory hearing, Father had successfully completed his probation and parole without incurring any violations. He also completed parenting and anger management classes while incarcerated. Father also actively engaged in therapy both while incarcerated and after being released. Father took these steps to rehabilitate himself so that he may provide his children with proper parental care and control.

Father's Brief at 16-17 (internal citations omitted). We reject Father's argument.

Specifically, we discern no abuse of discretion by the trial court in adjudicating L.C. dependent based on Father's past conduct, reflected in the June 20, 2011 aggravated circumstances order in S.T.S.D.'s dependency case. The record evidence supports the trial court's conclusion that Father's past conduct relating to the multiple severe soft tissue injuries, rib fractures, and death suffered by L.C.'s half-sister, S.C., for which Father served a prison sentence for endangering the welfare of a child, places L.C. at imminent risk of serious injury.

Further, we discern no abuse of discretion by the trial court in adjudicating L.C. dependent based on the stay-away order in effect against Father as this order, required by Father's prior conduct, establishes that L.C. "is without proper parental care or control, [or] subsistence." 42 Pa.C.S.A. § 6302. Finally, it follows that the record evidence belies Father's claim that he "has been sufficiently rehabilitated" and can provide L.C. with proper parental care and control. Father's Brief at 16. In addition to the stay-away order in effect against Father, Father did not testify in the portion of the March 12, 2015 hearing related to the dependency petition. As such, there is no evidence demonstrating Father's rehabilitation.

Based on the foregoing, we conclude the trial court did not abuse its discretion when it terminated Father's parental rights to S.T.S.D., nor when it adjudicated L.C. dependent. Accordingly, the trial court's March 12, 2015 decree and order are affirmed.

Decree affirmed. Order affirmed.

Judge Ott joins the memorandum.

Judge Stabile concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/17/2015