900 A.2d 378 (2006)
In the Interest of: L.C., II, a Person Within the Jurisdiction of the Juvenile Act of 1972 as Amended.
Appeal of: M.C., Paternal Grandmother.
Superior Court of Pennsylvania.
Submitted January 3, 2006.
Filed May 11, 2006.
*379 Donald R. Shroyer, Johnstown, for M.C., appellant.
Jay Y. Rubin, Indiana, for M.S., appellee.
Louis Camell, Sr., Altoona, for L.C., Sr., appellee.
Bradley M. Ophaug, Indiana, for L.C., II, appellee.
John P. Merlo, Indiana, for Indiana County Children and Youth, appellee.
BEFORE: TODD, McCAFFERY, and JOHNSON, JJ.
OPINION BY McCAFFERY, J.:
¶ 1 In this matter, Appellant, M.C., L.C., II's paternal grandmother ("Grandmother"), appeals from the court order denying her standing to participate in the proceedings at which her grandson was adjudicated dependent. Specifically, Grandmother asks us to use the reasoning underlying the line of cases that have granted standing to grandparents seeking custody of their grandchildren to extend standing to her in this dependency action. Upon review of the relevant statutory and case law, we conclude that such an extension is not warranted; thus, we affirm.
¶ 2 The facts and procedural history underlying this appeal are as follows. L.C. II ("L.C.") was born on October 14, 1988, and lived for approximately fourteen (14) years with Grandmother.[1] On July 8, 2003, a court order granted legal and physical custody of L.C. to his mother ("Mother"), and granted partial custody one weekend per month to Grandmother.
*380 ¶ 3 In December 2004, a juvenile delinquency petition was filed against L.C., alleging sexual offenses against a nine-year old girl. After reviewing a court-ordered competency evaluation of L.C., the court dismissed the juvenile petition, having determined that L.C. was not competent to stand trial. Indiana County Children and Youth Services ("ICCYS") then filed a dependency petition. Pending a hearing, L.C. was placed into the legal care, custody and control of ICCYS, which transferred him to a group home so that he could get treatment and counseling. There is no indication in the record that L.C.'s parents objected to ICCYS's actions with regard to their son.
¶ 4 The dispute in this case arose when Grandmother requested permission to participate in the proceedings at which L.C.'s dependency was to be adjudicated. On March 8, 2005, the court determined that Grandmother did not have standing, but allowed her and her legal counsel to attend the proceedings. The trial court's rationale for its decision was two-fold: (1) Grandmother did not have legal custody or in loco parentis status at the time of L.C.'s alleged offense; and (2) Grandmother's care, custody and control were not at issue in the dependency proceeding.
¶ 5 The court conducted a hearing to adjudicate dependency on March 23, 2005. After hearing testimony from witnesses from ICCYS and the group home where L.C. was then residing, the court followed ICCYS's recommendations; declared L.C. to be a dependent child; and ordered that he remain in the legal care, custody and control of ICCYS. (Notes of Testimony ("N.T."), 3/23/05, at 30-31). Mother, L.C.'s father, and his guardian ad litem, who were in attendance at the hearing, were in agreement with ICCYS's recommendations and the court's ruling. The court further determined that a placement goal of return to a family member was appropriate, and to that end, ordered the parents and any family member who was interested in assuming custody to submit to psychological evaluations and parenting assessments. (Id. at 32-33).
¶ 6 Grandmother filed a timely appeal from the order denying her standing to participate in the adjudication of dependency hearing, and presents one issue for our review:
Whether the paternal grandmother has standing to participate in this matter?
(Grandmother's Brief at 4).
¶ 7 To support her contention that she did have standing to participate in the hearing at which L.C.'s dependency was to be adjudicated, Grandmother relies on cases in which the courts have granted standing to a grandparent seeking custody of a grandchild. R.M. v. Baxter ex rel. T.M., 565 Pa. 619, 777 A.2d 446 (2001) (granting standing to a grandmother seeking custody of her grandchild who had been declared dependent); In re Adoption of Hess, 530 Pa. 218, 608 A.2d 10 (1992) (granting grandparents' petition to intervene in the adoption proceedings for their grandchildren after the parental rights of the natural parents had been terminated). Contrary to Grandmother's assertion, however, these cases are inapposite as they concern custody actions, not adjudications of dependency.
¶ 8 The issue presented is largely one of statutory interpretation, which is a question of law. Therefore, our review is plenary. Peters v. Costello, ___ Pa. ___, 891 A.2d 705, 710 (2005); Malone v. Stonerook, 843 A.2d 1278, 1280 (Pa.Super.2004), appeal denied, 580 Pa. 698, 860 A.2d 124 (2004). We must construe the words of a statute according to their plain meaning and common usage and follow the rules of grammar. Malone, supra (citing 1 Pa. *381 C.S.A. § 1903(a)). "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." Peters, supra at ___, 891 A.2d at 712 (quoting 1 Pa.C.S.A. § 1921(b)).
¶ 9 The Juvenile Act, 42 Pa.C.S.A. §§ 6301-65, mandates that the adjudication and the disposition of a dependent child are to be addressed separately and in sequential order. First, the court must consider and rule on a dependency petition. A child may be adjudicated dependent if the court finds that he or she lacks proper parental care and control and that such care and control are not immediately available. In re G.T., 845 A.2d 870, 872 (Pa.Super.2004). If the court concludes that a child is dependent, then, and only then, can it proceed to address custody issues and make a disposition of the case consistent with the best interests of the child. 42 Pa.C.S.A. §§ 6341(a) & (c), 6351(a); see In re A.E., 722 A.2d 213, 215 (Pa.Super.1998) (citing Helsel v. Blair County Children & Youth Servs., 359 Pa.Super. 487, 519 A.2d 456, 461 (1986) for the proposition that "a dependency determination is a prerequisite to a disposition of the custody issue"); In re Michael Y., 365 Pa.Super. 488, 530 A.2d 115, 118 (1987) (stating that an adjudication of dependency and a disposition based on best interests of the child represent a two-stage process).
¶ 10 Under the Juvenile Act, attendance at and participation in dependency proceedings are restricted. Dependency hearings are closed to the general public. 42 Pa.C.S.A. § 6336(d); In re L.J., 456 Pa.Super. 685, 691 A.2d 520, 526 (1997). Only a "party" has the right to participate, to be heard on his or her own behalf, to introduce evidence, and/or to cross-examine witnesses. 42 Pa.C.S.A. § 6338(a); L.J., supra (stating that a person who is not a party has no right to participate in a dependency proceeding). Although the Juvenile Act does not define "party," case law from this Court has conferred the status of party to a dependency proceeding on three classes of persons: (1) the parents of the juvenile whose dependency status is at issue; (2) the legal custodian of the juvenile whose dependency status is at issue, or (3) the person whose care and control of the juvenile is in question. In re J.P., 832 A.2d 492, 496 (Pa.Super.2003); L.J., supra; In re Manuel, 389 Pa.Super. 80, 566 A.2d 626, 628 (1989); Michael Y., supra. These categories logically stem from the fact that upon an adjudication of dependency, the court has the authority to remove a child from the custody of his or her parents or legal custodian. 42 Pa.C.S.A. §§ 6351. Due process requires that the child's legal caregiver, be it a parent or other custodian, be granted party status in order to be able to participate and present argument in the dependency proceedings. See Brooks-Gall v. Gall, 840 A.2d 993, 997-98 (Pa.Super.2003).
¶ 11 A relatively recent section of the Juvenile Act, added via amendment effective on January 1, 1999, after L.J., Manuel, and Michael Y. were decided, further indicates that standing in dependency matters is restricted:
§ 6336.1 Notice and Hearing.
The court shall direct the county agency or juvenile probation department to provide the child's foster parent, preadoptive parent or relative providing care for the child with timely notice of the hearing. The court shall provide the child's foster parent, preadoptive parent or relative providing care for the child the opportunity to be heard at any hearing under [the Juvenile Act]. Unless a foster parent, preadoptive parent or relative providing care for a child has been awarded legal custody pursuant to section *382 6357 (relating to rights and duties of legal custodian), nothing in this section shall give the foster parent, preadoptive parent or relative providing care for the child legal standing in the matter being heard by the court.
¶ 12 To achieve statutory standing under this section, a foster parent, preadoptive parent or relative providing care must have legal custody of the child, consistent with J.P., supra; L.J., supra; and Michael Y., supra. This statutory provision is silent regarding either the right to be heard or statutory standing for grandparents or relatives who at some time in the past served as primary caregiver for the child.
¶ 13 Our Supreme Court has interpreted other statutes to afford standing to grandparents to petition for custody and/or visitation of their grandchildren. In R.M. v. Baxter ex rel. T.M., 565 Pa. 619, 777 A.2d 446 (2001), our Supreme Court addressed whether a grandparent had standing under 23 Pa.C.S.A. § 5313(b) to petition for custody of a grandchild who had previously been adjudicated dependent. Taking an expansive view of section 5313(b), our Supreme Court determined that the grandparent did have standing. Id. at 626-27, 777 A.2d at 450-51. In In re Adoption of Hess, 530 Pa. 218, 219-24, 608 A.2d 10, 11-13 (1992), our Supreme Court interpreted the Adoption Act, 23 Pa.C.S.A. §§ 2101-2910, to permit grandparents to intervene in their grandchildren's adoption proceedings, even when the parental rights to the children had been terminated.
¶ 14 In the case sub judice, Grandmother seeks to rely on R.M. and Hess; however, we must stress that the issue Grandmother presents is not whether she had standing to petition for custody of her grandson, but rather, whether she had standing to participate as a party in the hearing at which his dependency was adjudicated. The conduct of a hearing to adjudicate dependency is controlled by the Juvenile Act. By the terms of the Juvenile Act, as interpreted by this Court's decisions in J.P., supra; L.J., supra; Manuel, supra; and Michael Y., supra, we conclude that Grandmother did not have standing. Grandmother did not satisfy any of the criteria by which we have previously defined a party to a hearing to adjudicate dependency: she was not the parent or the legal custodian of the juvenile whose dependency was at issue; and her care and control of the juvenile were not in question. At the time L.C. committed the offenses that led to these proceedings, he was in the legal and physical custody of Mothernot Grandmother. If the trial court had determined that he were not a dependent child, he would have been returned to the custody of Mother. In contrast, an adjudication of dependency wouldand didresult in transfer of L.C.'s custody from Mother to ICCYS. Therefore, although Mother certainly had standing to participate as a party, we can glean nothing from the statute or our case law that would justify extending standing to Grandmother.
¶ 15 Our conclusion does not mean that Grandmother would lack standing to seek custody of her grandson. See R.M., supra; K.B. II v. C.B.F., 833 A.2d 767, 775 (Pa.Super.2003). Indeed, the trial court seemed to acknowledge this possibility from the bench. The court ordered the parents, as well as any family member who was interested in assuming custody of L.C., to submit to psychological evaluations and parenting assessments, per the recommendation of ICCYS. (N.T. at 21, 32-33).
¶ 16 Our review of the record indicates that the trial court handled this matter with sensitivity and empathy, while properly applying the law. The court allowed *383 Grandmother to be present at the adjudication hearing. The record suggests that Grandmother had received notice of the proceedings, and would continue to do so in the future. (N.T. at 33). While keeping L.C. in a group home where he can receive treatment and counseling, the trial court appropriately deferred further custody and family placement decisions to another day. The trial court simplyand properlydenied Grandmother standing to participate as a party in L.C.'s hearing to adjudicate dependency.
¶ 17 For all of the reasons set forth above, we conclude that there was no error in the trial court's ruling. Accordingly, we affirm the trial court's order denying standing to Grandmother.
¶ 18 Order affirmed.
NOTES
[1] The natural parents have been divorced for many years.