J-A07042-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: A.Z., A MINOR, DATE OF BIRTH 2/18/2010 | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF:  Y.Z. | |
| | No. 1038 WDA 2015 |

Appeal from the Order June 4, 2015
In the Court of Common Pleas of Allegheny  County
Family Court at No(s): CP-02-DP-0000147-2015

| | |
|---|---|
| IN THE INTEREST OF: A.Z., A MINOR, DATE OF BIRTH 2/18/2010 | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF:  Y.Z. | |
| | No. 1082 WDA 2015 |

Appeal from the Order July 6, 2015
In the Court of Common Pleas of Allegheny  County
Family Court at No(s): CP-02-DP-0000147-2015
FID: 02-FN-093066-2010


BEFORE:  BOWES, J., MUNDY, J., and JENKINS, J.

MEMORANDUM BY JENKINS, J.:                    **FILED APRIL 25, 2016**

Appellant Y.Z. ("Mother") appeals from the orders entered in the Allegheny County Court of Common Pleas on June 4, 2015[1] and on July 6, 2015.[2]  We affirm.

The relevant facts and procedural history of this appeal are as follows. Mother and Child's natural father ("Father") were married twice.  Child was born on February 18, 2010, during the couple's second marriage, and Father filed a complaint for divorce and custody on July 17, 2013.  Mother obtained a Protection From Abuse Order ("PFA") against Father on July 19, 2013.

On June 17, 2014, Father filed a complaint for partial custody, which Mother opposed, claiming Father was a gambling addict, drug user and pornography viewer.[3] On June 30, 2014, the court awarded Father partial physical custody of Child. On August 5, 2014, Father filed a complaint for primary custody, which Mother opposed by filing a motion to limit Father's custody to supervised visits, alleging he was grooming Child for sexual abuse.  Mother attempted to file another PFA against Father.  On January

_____

[1] This order adjudicated minor A.Z. ("Child") dependent and gave primary physical custody of Child to Mother.  The appeal is docketed at 1038 WDA 2015.

[2] This order gave primary physical custody of Child to Father, and the appeal is docketed at 1082 WDA 2015.  The appeals were consolidated.

[3] Results of Father's consequential drug tests were negative.  Mother's later accusations that Father was viewing child pornography led to a search of his computer, which did not show any child pornography.

15, 2015, Mother requested that the court limit Father's time alleging sexual abuse, and the court denied the request.

On January 23, 2015, Children, Youth and Families ("CYF") filed a dependency petition which alleged there had been several reports of sexual maltreatment of Child, which Child denied, and that the continuing examinations, which did not show signs of abuse, placed pressure on Child and presented a concern for his ability to function in the family.[4]

On February 19, 2015, the court continued the dependency petition for a hearing scheduled on April 30, 2015. On March 19, 2015, Child's guardian ad litem ("GAL") filed a motion for supervised visitation with Father due to allegations of sexual abuse, which the court denied the next day.

On March 23, 2015, CYS filed an application for emergency protective custody, and the court ordered Father to undergo a psychological risk assessment and ordered Child to be evaluated by the Center for Traumatic Stress.

On April 7, 2015, CYS filed another petition for dependency, which alleged 7 reports were made to CYS, the last of which was by Mother's therapist, who said Mother played a cellphone recording of Child singing,

_____

[4] Mother continued to take Child to the hospital and told workers on two occasions that Child told her Father had put a flashlight or similar object in his "tushy." Examinations revealed a very small abrasion that was consistent with constipation, diarrhea, or poor hygiene. None of the examinations revealed signs of sexual abuse.

then saying he did not want to see his father because he sprays him in the face and he doesn't like it.

The court conducted a hearing. Child's teacher, Melissa Sevimli, testified Child told her that Father "asks me to put his pee pee in my mouth," then told the teacher Mother "is going to be so happy because she really likes it when I tell people this. And she said that I only have to tell people a little bit longer." N.T., 5/21/2015, at 115-116. She also testified that Child had a good relationship with Father, who came into the school sometimes, that Mother would often say inappropriate things about Father while dropping Child off at school, and that Mother seemed to think the school was conspiring against her. She testified that Child seemed happier after spending time with Father and more withdrawn after spending time with Mother. *Id.* at 115-156.

Dr. Annie Preis testified that Child had disclosed to her sexual abuse, but she did not think Child was being abused by Father. Rather, she thought that Child wanted to please his parents. Dr. Preis did not think Child was in any danger if permitted to be alone with Father. N.T., 5/21/2015, at 50-113.

Psychologist Anthony McGroarty testified that Mother believed Father was abusing Child but opined that he had concerns Mother's interpretation of certain behaviors as sexualized gave rise to fear of sexual abuse. He thought Mother could be experiencing delusion, misperceptions, or could be

expressing the influence of emotions overriding reality. N.T., 6/4/2015, at 66-67. He also testified that Mother had an unusual reaction when Child did not disclose Father's alleged abuse at an interview; she was panicked instead of relieved. *Id.* at 70.

Other teachers and doctors testified, and there was a recording of Father asking Child why he was saying all of these bad things about him when they were not true. The Child responded that he wanted to make Mother happy.

On June 4, 2015, after the hearing, the court adjudicated Child dependent, granted legal custody to CYS, granted physical custody to Mother, granted Father visitation, ordered all parties to go to therapy, and ordered Child to be registered for summer camp.

On July 3, 2015, CYS filed another "Shelter Care Application" petition, alleging Mother had again taken Child to hospital, and was subjecting Child to ongoing emotional turmoil. On July 6, 2015, after a shelter care hearing, the court granted CYS's petition and amended the shelter care order such that Father now had physical custody of Child and Mother had supervised visitation. The court ordered evaluations of all parties.

Mother filed timely notices of appeal to both orders,[5] and both Mother and the trial court complied with Pa.R.A.P. 1925.[6]

Mother raises the following issues for our review:

I. WHETHER THE [TRIAL] COURT ERRED AS A MATTER OF LAW AND ABUSED ITS DISCRETION IN FINDING THAT THERE WAS CLEAR AND CONVINCING EVIDENCE TO ADJUDICATE THE CHILD DEPENDENT PURSUANT TO 42 PA.C.S. § 6302(1)?

II. WHETHER THE [TRIAL] COURT ERRED AS A MATTER OF LAW AND ABUSED ITS DISCRETION IN ADJUDICATING THE CHILD DEPENDENT WHEN MOTHER IS A READY, WILLING, AND ABLE PARENT?

III. WHETHER THE [TRIAL] COURT ERRED AS A MATTER OF LAW AND ABUSED ITS DISCRETION IN FINDING THAT [CYF] USED REASONABLE EFFORTS TO PREVENT THE NECESSITY OF PLACEMENT OUTSIDE OF THE CHILD'S HOME WITH MOTHER, IN FINDING THAT IT WAS IN THE BEST INTEREST OF THE CHILD TO REMOVE THE CHILD

_____

[5] Mother filed a notice of appeal of the June 4, 2015 order on July 6, 2015, which was a Monday; thus, the appeal was timely. *See* 1 Pa.C.S. § 1908 ("Whenever the last day of any such period shall fall on Saturday or Sunday, …such day shall be omitted from the computation."). Mother filed a notice of appeal of the July 6, 2015 order on July 21, 2015.

[6] On July 6, 2015, Mother filed a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(i) and (b) regarding her appeal of the June 4, 2015 order. Regarding her appeal of the July 6, 2015 order, Mother filed a Pa.R.A.P. 1925(b) statement on July 17, 2015 and an amended Pa.R.A.P. 1925(b) statement on August 3, 2015. On August 5, 2015, the trial court issued a Pa.R.A.P. 1925(a) opinion ("Pa.R.A.P. 1925(a) Opinion # 1") to address Mother's Pa.R.A.P. 1925(b) statement regarding the June 4, 2015 appeal. On August 25, 2015, the trial court issued another Pa.R.A.P. 1925(a) opinion ("Pa.R.A.P. 1925(a) Opinion # 2") to address Mother's Pa.R.A.P. 1925(b) statement and her amended statement regarding the July 6, 2015 order.

FROM MOTHER'S HOME AND IT WAS CONTRARY TO THE WELFARE OF THE CHILD TO REMAIN IN MOTHER'S HOME?

IV. WHETHER THE [TRIAL] COURT ERRED AS A MATTER OF LAW AND ABUSED ITS DISCRETION IN FINDING THAT THERE WAS SUFFICIENT EVIDENCE TO SUPPORT THE SHELTER CARE APPLICATION AND IN MODIFYING THE CHILD'S PLACEMENT AND PLACING THE CHILD WITH FATHER?

V. WHETHER THE [TRIAL] COURT ERRED AS A MATTER OF LAW AND ABUSED ITS DISCRETION IN NOT PROCEEDING UNDER RULE 1606 OF THE RULES OF JUVENILE PROCEDURE, MODIFICATION OF A DEPENDENT CHILD'S PLACEMENT AND INSTEAD IN OPERATING UNDER THE EMERGENCY CARE AND SHELTER CARE PROVISIONS OF THE RULES OF JUVENILE PROCEDURE?

VI. WHETHER THE [TRIAL] COURT ERRED AS A MATTER OF LAW AND ABUSED ITS DISCRETION IN FAILING TO USE THE CLEAR NECESSITY STANDARD BEFORE REMOVING THE DEPENDENT CHILD FROM MOTHER'S HOME?

Mother's Brief at 8-9.[7]

In her first two issues, Mother challenges the court's discretion in adjudicating Child dependent. She claims that she is a ready, willing, and able parent, and that this should have been a custody case as opposed to a

_____

[7] Elliot J. Schuchardt, Esq. filed an *amicus* brief in support of Mother. An interested party may file an *amicus curiae* brief concerning questions before an appellate court, however, he must accept the case before the court and cannot inject new issues into a case which have not been presented by the parties. ***See All. Home of Carlisle, PA v. Bd. of Assessment Appeals***, 919 A.2d 206, 228 (Pa.2007). The *amicus* brief forwards similar arguments to those offered by Mother. To the extent the *amicus* brief injects new issues, which have not been presented by the parties, we will not address those arguments.

dependency case. She claims that failure to comply with court-ordered therapy does not warrant a finding of dependency by clear and convincing evidence, and that the trial court erred by adjudicating Child dependent. We disagree.

> The standard of review which this Court employs in cases of dependency is broad. However, the scope of review is limited in a fundamental manner by our inability to nullify the fact-finding of the lower court. We accord great weight to this function of the hearing judge because he is in the position to observe and rule upon the credibility of the witnesses and the parties who appear before him. Relying upon his unique posture, we will not overrule his findings if they are supported by competent evidence.

*In re N.A.*, 116 A.3d 1144, 1148 (Pa.Super.2015), *appeal denied,* 117 A.3d 298 (Pa.2015) (quoting *In the Matter of C.R.S.,* 696 A.2d 840, 843 (Pa.Super.1997)).

To adjudicate a child dependent, a court must abide by the following statute:

> **§ 6341. Adjudication**
>
> **(a) General rule.--**After hearing the evidence on the petition the court shall make and file its findings as to whether the child is a dependent child. … If the court finds that the child is not a dependent child or that the allegations of delinquency have not been established it shall dismiss the petition and order the child discharged from any detention or other restriction theretofore ordered in the proceeding….
>
> \* \* \*
>
> **(c) Finding of dependency.--**If the court finds from clear and convincing evidence that the child is dependent, the court shall proceed immediately or at a postponed hearing,

- 8 -

which shall occur not later than 20 days after adjudication if the child has been removed from his home, to make a proper disposition of the case.

42 Pa.C.S. § 6341.

A dependent child is defined statutorily as one who:

(1) is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals. A determination that there is a lack of proper parental care or control may be based upon evidence of conduct by the parent, guardian or other custodian that places the health, safety or welfare of the child at risk, including evidence of the parent's, guardian's or other custodian's use of alcohol or a controlled substance that places the health, safety or welfare of the child at risk[.]

42 Pa.C.S. § 6302.

Further, we observe:

A determination that there is a lack of proper parental care or control may be based upon evidence of conduct by the parent, guardian, or other custodian that places the health, safety or welfare of the child at risk. The question of whether a child is lacking proper parental care and control so as to be a dependent child encompasses two discrete questions: whether the child presently is without proper care and control, and if so, whether such care and control are immediately available.

*In re M.W.*, 842 A.2d 425, 428 (Pa.Super.2004) (internal quotations and citations omitted).

If a court finds by clear and convincing evidence that a child is dependent, a court may

make an appropriate disposition of the child to protect the child's physical, mental and moral welfare, including allowing the child to remain with

the parents subject to supervision, transferring temporary legal custody to a relative or a private or public agency, or transferring custody to the juvenile court of another state. 42 Pa.C.S.[] § 6341(a).

*In re E.B.*, 898 A.2d 1108, 1112-13 (Pa.Super.2006) (citation omitted).

Here, in adjudicating Child dependent, the trial court reasoned:

In this case, I found that CYF met its burden of showing by clear and convincing evidence that Child's welfare was at risk based on the conduct of Mother. I found that the repeated emergency room visits and forensic examinations were placing unwarranted and damaging psychological stress on Child and that this was compounded by the failure of either parent to get Child into therapy. Because Child was not receiving individual therapy so that we could get to the truth of what was occurring in his life, there was no way to know if the allegations being made had any basis. We could not determine based on the examinations alone, whether the disclosures made by Child were real, were imagined, or were procured by Mother.

Notably, despite making allegations of very serious abuse being perpetrated on Child, Mother did not engage a therapist for Child and, in fact, declined to seek therapy for the child after her pediatrician, Dr. Lidia Comini-Turzai, suggested it. (6/4/2015 TR p. 12, 17).

Dr. McGroarty's testimony was especially illuminating to me, when he referred to the Child as "one of the most oppositional children we've had in the office ever actually." (6/4/2015 TR p. 60). With his range of experience, examining children from extremely dysfunctional families, this testimony was quite convincing that Child was not being appropriately parented. Dr. McGroarty's testimony regarding Mother's atypical reaction to being told that Child did not disclose abuse during the AFA interview was, likewise, illuminative as to Mother's state of mind. (6/4/2015 TR p. 69 -70)[.]

Dr. Preis's testimony was also especially compelling. She expressed her concern that the Child was being placed under an immense amount of pressure, that he was

conflicted and that the parents did not set any limits on him. (5/21/15 TR p. 53-56)[.] She also testified regarding her review of the Three Rivers Adoption Council report as follows: "I think that there are real concerns that the allegations are not real, that [Child] is trying to please the parents." (5/21/15 TR p. 61)[.]

I found, based on all of the testimony and evidence presented to me, that Child was without proper parental care or control.

…Here, I found that Child's intellectual and moral well-being was indeed in jeopardy.

I agreed with CYF that first, the repeated medical examinations and interviews, as well as the numerous PFA filings, threatened Child's mental safety and that, second, the Parties' inability to find a solution did so, too. Every professional who testified noted Child's comfort with his Father, but also noted Child's conflicted feelings. All the evidence before me pointed to a child who loved and felt safe with both parents but who was being torn apart by Mother's suspicions regarding Father and her conduct arising from those suspicions, as well as the parties' inability to find a way to cope with the issues at hand. Father may have made some inappropriate parenting decisions; hence the referral to therapy, but no evidence sustained a finding that there was sexual maltreatment by Father.

Despite finding [Child] to be a dependent child on June 4, 2015, I did not remove him from Mother's custody, nor from Father's care. I found the adjudication necessary for the reasons asserted by CYF. These parents failed to get Child the therapeutic help he needed without CYF involvement. Mother's conduct placed the Child in jeopardy, and that conduct was escalating. Transferring legal custody to CYF and continuing Agency involvement is the only way to ensure that the escalation of the sexual abuse allegations stops and the parents would continue to get Child the help he needs.

As Child was without proper parental care and was being placed at risk by that lack of proper care, it was proper to

adjudicate him dependent. That adjudication should be affirmed.

Pa.R.A.P. 1925(a) Opinion # 1 at 12-14. The trial court's findings are supported by competent evidence, and it properly determined Child was presently without proper care and control. Further, because Mother was habitually taking Child to the hospital to be examined and refusing to get him therapy, and because Father was being investigated by Childline for possible sexual abuse of Child, the trial court properly determined that such proper care and control was not immediately available. Thus, Mother's first two issues merit no relief.

In her remaining issues, Mother argues the court erred in removing Child from Mother and placing Child with Father. She avers Child should have only been removed from her if it was clearly necessary for his well-being and that this could not have been found unless the record had demonstrated that every reasonable effort had been made to keep the family together. She claims that placing Child with Father is inappropriate in light of disclosures of abuse, especially when no professionals advocated for Child's placement with Father. Further, she claims the trial court should have proceeded under Juvenile Rule 1606, Modification of a Dependent Child's placement and that the court erred by proceeding under Rule 1240. Mother's issues merit no relief.

As discussed previously, the court properly adjudicated Child dependent.

If the court concludes that a child is dependent, then, and only then, can it proceed to address custody issues and make a disposition of the case consistent with the best interests of the child. 42 Pa.C.S.[] §§ 6341(a) & (c), 6351(a); *see In re A.E.,* 722 A.2d 213, 215 (Pa.Super.1998) (citing *Helsel v. Blair County Children & Youth Servs.,* 519 A.2d 456, 461 ([Pa.Super.]1986) for the proposition that "a dependency determination is a prerequisite to a disposition of the custody issue"); *In re Michael Y.,* 530 A.2d 115, 118 ([Pa.Super.]1987) (stating that an adjudication of dependency and a disposition based on best interests of the child represent a two-stage process).

*In re L.C., II*, 900 A.2d 378, 381 (Pa.Super.2006).

The disposition of a child adjudicated dependent is governed by section 6351 of the Juvenile Act, which provides, in relevant part:

**(a) General rule.--**If the child is found to be a dependent child the court may make any of the following orders of disposition best suited to the safety, protection and physical, mental, and moral welfare of the child:

(1) Permit the child to remain with his parents, guardian, or other custodian, subject to conditions and limitations as the court prescribes, including supervision as directed by the court for the protection of the child.

(2) Subject to conditions and limitations as the court prescribes transfer temporary legal custody to any of the following:

(i) Any individual resident within or without this Commonwealth, including any relative, who, after study by the probation officer or other person or agency designated by the court, is found by the court to be qualified to receive and care for the child.

(ii) An agency or other private organization licensed or otherwise authorized by law to receive and provide care for the child.

- 13 -

(iii) A public agency authorized by law to receive and provide care for the child.

(2.1) Subject to conditions and limitations as the court prescribes, transfer permanent legal custody to an individual resident in or outside this Commonwealth, including any relative, who, after study by the probation officer or other person or agency designated by the court, is found by the court to be qualified to receive and care for the child. A court order under this paragraph may set forth the temporary visitation rights of the parents. The court shall refer issues related to support and continuing visitation by the parent to the section of the court of common pleas that regularly determines support and visitation.

42 Pa.C.S. § 6351(a).

Additionally, the trial court is required to make the following preplacement findings:

**(b) Required preplacement findings.--** Prior to entering any order of disposition under subsection (a) that would remove a dependent child from his home, the court shall enter findings on the record or in the order of court as follows:

(1) that continuation of the child in his home would be contrary to the welfare, safety, or health of the child;

(2) whether reasonable efforts were made prior to the placement of the child to prevent or eliminate the need for removal of the child from his home, if the child has remained in his home pending such disposition; or

(3) if preventive services were not offered due to the necessity for an emergency placement, whether such lack of services was reasonable under the circumstances; or

(4) if the court has previously determined…that reasonable efforts were not made to prevent the initial removal of the child from his home, whether reasonable

efforts are under way to make it possible for the child to return home; or

(5) if the child has a sibling who is subject to removal from his home, whether reasonable efforts were made prior to the placement of the child to place the siblings together or whether such joint placement is contrary to the safety or well-being of the child or sibling.

The court shall not enter findings under paragraph (2), (3) or (4) if the court previously determined that aggravated circumstances exist and no new or additional reasonable efforts to prevent or eliminate the need for removing the child from the home or to preserve and reunify the family are required.

42 Pa.C.S. § 6351(b).

Regarding whether a child should be removed from parental custody, this Court has stated:

The law is clear that a child should be removed from her parent's custody and placed in the custody of a state agency only upon a showing that removal is clearly necessary for the child's well-being. In addition, this [C]ourt had held that clear necessity for removal is not shown until the hearing court determines that alternative services that would enable the child to remain with her family are unfeasible.

In addition, this Court has stated: "It is not for this Court, but for the trial court as fact finder, to determine whether a child's removal from her family was clearly necessary." *In re S.S.,* 651 A.2d 174, 177 ([Pa.Super.]1994).

*In re A.B.*, 63 A.3d 345, 349-50 (Pa.Super.2013) (some internal citations omitted).

At each review hearing for a dependent child who has been removed from the parental home, the court must consider the following, statutorily-mandated factors:

the continuing necessity for and appropriateness of the placement; the extent of compliance with the service plan developed for the child; the extent of progress made towards alleviating the circumstances which necessitated the original placement; the appropriateness and feasibility of the current placement goal for the child; and, a likely date by which the goal for the child might be achieved.

***In re J.H.**,* 788 A.2d 1006, 1008 (Pa.Super.2001) (citing 42 Pa.C.S.A. § 6351(f)) (other citations omitted). Matters of custody and placement for a dependent child must be decided under the standard of the *child's* best interests, not those of his or her parents. **G.P.-R, supra** at 973.

When the child welfare agency has made reasonable efforts to return a foster child to his or her biological parent, but those efforts have failed, then the agency must redirect its efforts towards placing the child in an adoptive home. **Id.**

***In re N.C.**,* 909 A.2d 818, 823 (Pa.Super.2006) (emphasis in original).

Mother claims that CYS and the trial court erred by failing to abide by the following regulation:

**§ 1606. Modification of Dependent Child's Placement.**

A. *County agency's duties*.

1) *Emergencies*.

a) Only in an emergency when a judge cannot be reached, a child may be placed temporarily in a shelter care facility or other appropriate care.

b) The county agency immediately shall notify the court and all parties of any change made due to the emergency.

c) The county agency shall file a motion or stipulation for modification of the dispositional order by the next business day of the child's placement in a shelter care facility or other appropriate care.

2) Non-emergent cases. In all other cases, the county agency shall seek approval of the court for a change in the child's placement prior to the removal of the child from the placement by the filing of a motion or a stipulation for modification of the dispositional order.

B. *Contents of the motion*. The motion for modification of the dispositional order shall include:

1) the specific reasons for the necessity of change to the order;

2) the proposed placement;

3) the current location of the child;

4) the manner in which any educational, health care, and disability needs of the child will be addressed;

5) an averment as to whether each party concurs or objects to the proposal, including the child's wishes if ascertainable; and

6) the signatures of all the parties.

C. *Objections*. If a party objects to proposed modification of the dispositional order, the objections shall be filed no later than three days after the filing of the motion for modification of the child's placement.

D. *Court's duties*. Once the county agency has requested approval from the court to modify a child's placement or after an emergency change in placement has already taken place, the court may:

1) schedule a prompt hearing to determine whether there will be a modification of the child's placement;

2) enter an appropriate order to modify the child's placement; or

3) enter an order denying the motion.

237 Pa. Code § 1606.

Instead of filing a motion for modification, CYS filed a shelter care application.

- 17 -

**Rule 1240. Shelter Care Application**

**A. Filings.** A shelter care application may be oral or in writing. If oral, within twenty-four hours of exercising protective custody pursuant to Rule 1210, the county agency shall file a written shelter care application.

**B. Application contents.** Every shelter care application shall set forth:

(1) the name of the applicant;

(2) the name, date of birth, and address of the child, if known;

(3) the name and address of the child's guardian, or if unknown, the name and address of the nearest adult relative;

(4) the date that the child was taken into custody;

(5) a concise statement of facts in support of the allegation of dependency;

(6) a statement detailing family finding efforts and:

(a) the reasonable efforts made to prevent placements; and

(b) why there are no less restrictive alternatives available;

(7) a verification by the applicant that the facts set forth in the petition are true and correct to the applicant's personal knowledge, information, or belief, and that any false statements are subject to the penalties of the Crimes Code, 18 Pa.C.S. § 4904, relating to unsworn falsification to authorities;

(8) the signature of the applicant and the date of the execution of the application; and

(9) the whereabouts of the child unless the county agency has determined it would pose a risk to the safety of the child or the guardian, or disclosure is prohibited by the court.

Pa.R.J.C.P. 1240.

Here, the trial court properly adjudicated Child dependent, gave primary physical custody of Child to Mother, and ordered all parties to go to therapy on June 4, 2015. On July 3, 2015, after Mother took Child again to the hospital alleging sexual abuse, CYS filed an emergency custody authorization and a shelter care application, and the court placed Child with a relative until the shelter hearing. In granting the petition, after a shelter care hearing, and placing Child with Father, the trial court reasoned:

> Mother complains…that I did not follow the directives of Rule 1606 concerning changing the placement of Child. Child was removed on an emergency basis and placed with Mother's cousin. Child could have remained there until the Childline investigations were concluded but for Cousin's refusal to continue that custodial arrangement. One of the goals of the Act is to avoid unnecessary trauma to children. Once the cousin was no longer a viable option, I chose not to cause additional trauma to Child by placing him with a stranger. I, instead, placed him with Father, who I am convinced poses no danger to Child.
>
> Mother argues it was error to operate under the emergency care and shelter provisions. I disagree. Child is at a formative time in his life. He is being subjected to repeated anal examinations by strangers and being subjected to the unfounded belief that one of his parents is evil. As this behavior was continuing to escalate despite all efforts, emergency removal was not only appropriate but necessary to protect Child from further harm.
>
> \* \* \*
>
> The open Childline investigation of Father is one which was instituted as a result of Mother, yet again, taking Child to the emergency room on June 29, 2015 and alleging sexual abuse. This Childline [investigation] is based on allegations no different than the others which have previously resulted in the investigations being closed as unfounded.

Because the only reason CYF opposed placement with Father was the existence of an uninvestigated Childline (7/6/2015 TR. p 39, 43), I found placement with Father, with services in place, to be the most appropriate course of action. I requested that the Childline investigations be expedited. (7/6/2015 TR. p 43, 81, 82)[.]

Mother complains that I ordered her custody to be supervised. At the hearing, she objected to the supervision because she has not been accused of sexually abusing the Child. She misunderstands that the primary purpose of the supervision is to supervise the communications between herself and Child. (7/6/2015 TR. p 127-128)[.] Mother is corrupting this Child and the only way to stop that abuse is to prevent her from making suggestions to him.

Mother also stated her belief that the "whole basis" of the July 2, 2015 Childline [investigation] was that it stated that there had been ten emergency room visits, when in fact there had only been five. (7/6/2015 TR. p 59-62, 93-95)[.] This demonstrates that she completely lacks understanding of the harm she is causing Child[.]

Mother is using repetitive accusations of abuse to keep Child from Father, whether she is consciously aware of it or not. As there is no evidence that Father has abused Child and Father has numerous services to observe and assist him, placement with Father was the least traumatic step I could take.

I cannot speculate on the cause of or the treatment for what I believe to be Mother's issues. It is my sincere hope that she gets the appropriate therapy and treatment to allow more time with her Child. But my role is to protect that Child in the least intrusive and traumatic way I can. To that end, I removed Child from Mother and placed Child with Father.

*     *     *

I adjudicated Child dependent because I found him to be at risk by being without proper parental care. By continuing to escalate her unfounded allegations, I found Mother was placing Child in imminent danger of harm. It

> was, therefore, proper to remove him from her care. As Father poses no threat to Child's safety, placement with him was appropriate. As it turns out, Child has already greatly benefited from that placement. My decision should be affirmed.

Pa.R.A.P. 1925(a) Opinion # 2 at 13-14, 18-20.

After listening to CYS's recommendations as well as testimony from Mother and Father, the court decided Father should have physical custody and Mother should have supervised visitation.

The court considered the appropriateness of the current placement with Mother and determined it was detrimental to Child. The court noted Mother had not complied with taking Child for evaluations and that she was still taking him to the emergency room and alleging sexual abuse. Efforts to keep Child with Mother failed, and it was in the best interest of Child to remain with Father, who provided a stable environment. ***See In re N.C., supra.***

The trial court complied with the mandates of the Juvenile Act in order to protect the best interest of Child. Further, it found it was clearly necessary to remove Child from Mother to protect Child. Competent evidence supports the court's findings, and the court did not abuse its discretion.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>4/25/2016</u>