J-A08013-19

2019 PA Super 344

| | | |
|---|---|---|
| IN THE INTEREST OF: A.M., A MINOR | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: P.M.-T., NON-BIOLOGICAL PARENT | : : : : : : : | No. 987 WDA 2018 |

Appeal from the Order Dated June 9, 2018
In the Court of Common Pleas of Allegheny County
Family Court at No(s): CP-02-DP-0000934-2017

BEFORE: PANELLA, P.J., STABILE, J., and McLAUGHLIN, J.

OPINION BY PANELLA, P.J.: **FILED NOVEMBER 19, 2019**

Appellant, P.M.-T., contends the trial court erred in denying him[1] standing at the dependency proceedings of the child that was born during his same-sex marriage to J.M. ("Mother"). We agree, and therefore reverse.

It is undisputed that P.M.-T. and Mother were legally married in Allegheny County on February 20, 2015. At that time, Mother had two children from a previous relationship who were adjudicated dependent and placed with their maternal grandmother on January 10, 2017. Mother gave birth to A.M. ("Child") on July 21, 2017. Both P.M.-T. and Mother stated that P.M.-T. was named as the father on the birth certificate. After Child was born, the Allegheny County Office of Children, Youth and Families ("OCYF") obtained an Emergency Protective Custody Order for Child and she was placed, along with

---

[1] P.M.-T. was born female but uses male pronouns and titles to refer to himself. **See** Continuance Order, 8/22/17, at 1. We will, as the trial court did, do the same.

her half siblings, with her maternal grandmother. A guardian *ad litem* ("GAL") was appointed for Child and an adjudicatory hearing was scheduled for August 22, 2017.

Both P.M.-T. and Mother were at the adjudicatory hearing on August 22. Mother raised the issue of P.M.-T.'s parental status, informing the court that P.M.-T. was her same-sex spouse, was listed as the father on Child's birth certificate and should be regarded as Child's legal parent. **See** Continuance Order, 8/22/17, at 1. The court continued the adjudicatory hearing, but directed the parties to address P.M.-T.'s parental status, and therefore his standing, at the continued hearing scheduled for October 11, 2017.

At the continued adjudicatory hearing, P.M.-T. requested that he be recognized as Child's father and be granted standing. **See** N.T. Adjudicatory Hearing, 10/11/17, at 8-9. The court heard initial arguments on P.M.-T.'s standing; specifically, whether he was presumed to be Child's parent pursuant to the presumption of paternity.[2] Ultimately, the court deferred its decision on P.M.-T.'s standing and appointed counsel to assist P.M.-T. with presenting argument on the matter. The court also adjudicated Child dependent as to Mother, based on Mother's stipulation that Child should not be in her care until

---

[2] P.M.-T. refers to the presumption as one of parentage, rather than paternity, and the GAL refers to it as the marriage presumption. While we acknowledge that the term presumption of paternity is not sufficiently inclusive to reflect the reality of modern families, which include those with two same sex spouses, we will refer to the presumption as one of paternity in order to be consistent with the terminology thus far used by our Supreme Court.

she made further progress on her reunification goals, which included domestic violence services. **See** Dispositional Order, 11/14/17, at 2-3; N.T. Adjudicatory Hearing, 10/11/18, at 16.

A dispositional hearing was held on November 14, 2017. P.M.-T. was not present at the hearing, and Mother explained that P.M.-T. had been missing for over a week and that she intended to separate from him because the relationship was hindering her progress toward regaining custody of her children. **See** N.T. Dispositional Hearing, 11/14/17, at 5-6, 52-53. Given P.M.-T.'s absence, the court did not consider the standing issue, but proceeded to the dispositional hearing and ordered that Child remain in her placement with her grandmother. The court then scheduled a permanency review hearing for February 21, 2018, which P.M.-T. attended, but the hearing was continued until April 9, 2018.

At that hearing on April 9, which P.M.-T. also attended, the parties presented legal argument on whether the presumption of paternity applied to a non-biological spouse, such as P.M.-T., whose same-sex spouse gave birth to a child during their marriage. Counsel for P.M.-T. made clear this was an issue of first impression in Pennsylvania. **See** N.T. Permanency Review Hearing, 4/9/18, at 7. Although the trial court did not rule on the standing issue at the hearing, instead taking the matter under advisement, it did find that Mother and P.M.-T. were married, intended to remain married, and intended to reestablish a household together. **See** Permanency Review Order, 4/9/18, at 4.

- 3 -

The trial court issued its order denying P.M.-T.'s request for standing on June 9, 2018. According to the court, the presumption of paternity was not applicable to this case because P.M.-T. and Mother's marriage, irrespective of whether it was a same-sex or opposite-sex marriage, was not intact. P.M.-T. appealed to this Court.

P.M.-T. argues, as do Mother and OCYS, that the trial court erred by not granting P.M.-T. standing because he is the legal parent of Child under the presumption of paternity.[3]

At its core, the question before this Court is one of standing. Standing is a question of law and therefore, the standard of review is *de novo* and the scope of review is plenary. **See C.G. v. J.H**., 193 A.3d 891, 898 (Pa. 2018). Under the Juvenile Act, only a "party" has the right to participate, introduce evidence, and present arguments in dependency proceedings. **See In re L.C., II**, 900 A.2d 378, 381 (Pa. Super. 2006). Parents of the child whose dependency status is at issue are considered "parties" and therefore have standing at dependency proceedings. **See id.** This is only logical given that the court has the ability to remove a dependent child from the custody of his parents, **see id.**, and that the interest of parents in "the care, custody and

---

[3] Only the GAL takes the position that the trial court properly denied standing to P.M.-T on the basis that he and Mother did not have an intact marriage. Notably, the GAL concedes that "the marriage presumption applies to same-sex couples. . . ." The GAL further allows that if the evidence showed that P.M.-T and Mother had an intact marriage, then the presumption would have been available to P.M.-T. Brief of GAL, at 5.

- 4 -

control of their children is perhaps the oldest fundamental liberty interest recognized by [the Unites States Supreme] Court." ***Troxel v. Granville***, 530 U.S. 57, 65, 120 S.Ct. 2054, 2060, 147 L.Ed.2d 49 (2000).

The presumption of paternity, *i.e.,* the presumption that a child conceived or born during a marriage is a child of the marriage, has been described by our Supreme Court as "one of the strongest presumptions known to the law." ***Vargo v. Schwartz***, 940 A.2d 459, 463 (Pa. Super. 2007). The doctrine presumes that if a woman gives birth during her marriage, her spouse is the other parent to that child. The policy underlying the presumption of paternity is the preservation of marriages, and the presumption will only be applied where that policy is advanced by its application. ***See id.*** "When there is no longer an intact family or a marriage to preserve, then the presumption of paternity is not applicable." ***Id.; see also K.E.M. v. P.C.S***., 38 A.3d 798, 806-07 (Pa. 2012) (presumption of paternity only applicable to situations in which underlying policies will be advanced, namely where there is an intact marriage to protect). In cases where the marriage is intact, however, the presumption is applicable and irrebuttable. ***See Strauser v. Stahr***, 726 A.2d 1052, 1055-56 (Pa. 1999).

Here, P.M.-T. and Mother were legally married when Child was conceived as well as when she was born. ***See*** Brief of GAL, at 3-4 (conceding that Mother and P.M.-T. were married for over two years before Child's birth). According to both P.M.-T. and Mother, P.M.-T. is listed as the father on Child's

birth certificate, and P.M.-T. informed the trial court that he wanted to be recognized as the father and wanted to participate in Child's dependency proceedings. *See* Dispositional Order, 11/14/17, at 2; N.T., 10/11/17, at 8. P.M.-T. and Mother remained married and intended to remain married at the time P.M.-T.'s party status was being challenged. There is no third party challenge to the parentage of Child. *See* N.T., 10/11/17, at 7; N.T., 4/9/18, at 6, 10. Given these circumstances, we conclude the trial court should have applied the presumption of paternity to P.M.-T.

The trial court found, however, that the presumption was not applicable because P.M.-T. and Mother's marriage was not intact. In support of that conclusion, the trial court cited to the fact that P.M.-T. and Mother's marriage had been plagued by domestic violence and that their marriage had "fluctuated." The trial court highlighted Mother's testimony at the dispositional hearing on November 14 that she did not know the whereabouts of P.M.-T. and that she essentially viewed her relationship with him as over. *See* Trial Court Opinion at 10.

It is readily apparent from the record that the marriage between P.M.-T. and Mother is riddled with challenges and difficulties. Under our case law, though, the existence of troubles in a marriage – even one as serious and disturbing as domestic violence - does not mean that such a marriage is not intact for purposes of determining the applicability of the presumption of paternity. As the Supreme Court stated in *Strauser*:

> [T]he marriage of Mother and Husband, like many, has encountered serious difficulties. It is in precisely this situation . . . that the presumption of paternity serves its purpose by allowing husband and wife, despite past mistakes, to strengthen and protect their family.

*Id.,* at 1056.

The GAL asserts that **Strauser** is not applicable to this case because the spouses in **Strauser** never separated, whereas Mother testified at the dispositional hearing on November 14th that she had not been able to locate P.M.-T. for over a week and that she intended to separate from him. We disagree.

While it is true that Mother was uncertain of P.M.-T.'s whereabouts at one point and expressed an intent to separate from him, there is no evidence she followed through on that intention as the two appeared together at the subsequent hearings on February 21 and April 9, 2018. The record reveals that at that time, P.M.T. and Mother remained married, intended to remain married, and were working, however imperfectly, to address the issues in their family that needed to be remedied. **See** Permanency Review Order, 4/9/18, at 3-4 (finding that "it is clear that Mother and [P.M.-T.] currently intend to remain married" and that Mother and P.M.-T. were at least sporadically attending various treatment programs, including those for substance abuse and domestic violence).[4]

_____

[4] The trial court acknowledged in its opinion that Mother and P.M.-T. "resumed their relationship" but noted that they lacked housing and had not successfully

We are, of course, mindful that the question before us is the threshold one of whether P.M.-T. has standing to participate as a party in the dependency proceedings of Child. Undoubtedly, the issues in P.M.-T. and Mother's marriage cited by the trial court are relevant to the separate and distinct matters related to Child's adjudication and placement. **See In re J.S.**, 980 A.2d 117, 121 (Pa. Super. 2009) (standing is a threshold issue only and does not address the merits of the separate and distinct underlying issues of adjudication or the propriety of permanency goal in dependency hearings). They cannot, however, be relied upon to support the trial court's conclusion that the presumption of paternity did not afford P.M.-T. standing at Child's dependency proceedings because his existing marriage to Mother was not intact. As a result, we agree with P.M.-T. that the trial court erred by denying him standing. **See J.L. v. A.L. and K.L.**, 205 A.3d 347, 353 (Pa. Super. 2019) (trial court's order regarding paternity is reviewed for abuse of discretion or error of law).[5]

_____

reestablished a household together. **See** Trial Court Opinion at 10-11. We find that, under **Strauser**, a married couple's housing instability is not a proper basis for finding that the marriage itself is not intact for purposes of the presumption of paternity. **See** 726 A.2d at 1056.

[5] Mother essentially argues that the trial court erred by arriving at its conclusion that her marriage to P.M.-T. was not intact without the benefit of hearing testimony on that issue from the spouse who was found to lack standing. In a similar vein, OCYF argues that the trial court erred by limiting the standing proceeding to legal argument, and improperly used information learned from the cases of Mother's two older children to substantiate its conclusion that the marriage between Mother and P.M.-T. was not intact.

In light of our conclusion that the marriage of Mother and P.M.-T. was intact for purposes of the presumption of paternity, we must address the broader issue of whether that presumption applies to the situation at hand because it involves a same-sex marriage. All parties contend that the presumption is applicable to same-sex spouses, and we agree.

When a child is born while two people are married, and the question of parentage arises while that marriage is intact, the presumption of paternity is meant to apply to the person in the marriage who was not the one to give birth to the child. That is the exact situation here.

Our case law plainly states that the policy underlying the presumption of paternity is to preserve marriages. Same-sex marriages are legal in Pennsylvania and must be "afforded the same rights and protections as opposite-sex" marriages. *In Re Estate of Carter*, 159 A.3d 970, 977 (Pa. Super. 2017). We therefore have no difficulty in holding that the presumption of paternity is equally as applicable to same-sex marriages as it is to opposite-sex marriages.[6]

_____

Given that we have already determined that the trial court erred by finding that the marriage was not intact, we do not need to reach the merits of these claims. We do note, however, that the record reflects that the court handled the standing issue with sensitivity and showed a genuine intent to understand the law of parentage in the context of a family construct that had not yet been before the court.

[6] None of the parties assert that our Supreme Court's decision in *C.G. v, J.H*., 193 A.3d 891 (Pa. 2018) is in any way controlling, or even applicable, to the question presented by this matter. However, the Court in *C.G.* considered the

In doing so, we join other states that have held similarly. ***See, e.g., LC v. MG and Child Support Agency***, 143 Hawai'i 302, 314, 430 P.3d 400, 412 (2018) (wife was presumed to be a parent of child born during spouses' same-sex marriage pursuant to statutory marital presumption); ***McLaughlin v. Jones***, 243 Ariz. 29, 37, 401 P.3d 492, 500 (2017) (extending statutory marital paternity presumption to same-sex spouses); ***Wendy G-M v. Erin G-M***, 45 Misc.3d 574, 596, 985 N.Y.S.2d 845, 861 (Sup.Ct. Monroe County 2014) (under New York common law, female spouse of biological mother was presumed to be a parent to child born during that marriage).

In sum, then, we hold that the trial court erred in finding that P.M.-T. and Mother's marriage was not intact, and in turn, erred by not applying the presumption of paternity to P.M.-T. so that he had standing as a legal parent to participate in the dependency proceedings of Child.

_____

issue of whether an *unmarried* former partner had standing to seek custody as a "parent" of a child born during her same-sex relationship with the biological mother. In holding that she did not, the Court opined that the former partner was not a "parent" because she had no biological connection to the child, had not officially adopted the child and had not entered into the very specific type of contract that Pennsylvania courts have recognized as affording legal parentage by way of contract. ***Id.***, at 903-04. The Court noted that the "presumption attendant to marriage" was also a way to establish parentage in Pennsylvania, ***id.,*** at 906, but that such a presumption was not applicable in ***C.G***. because the parties had never been married. The Court found that the issue of whether their out-of-state commitment ceremony was considered a marriage was beyond the scope of the legal issue presented and the facts of that case**.** ***Id.,*** at 899 n.5. In stark contrast to the situation in ***C.G***., there is no dispute here that P.M.-T. and Mother were legally married and that Child was born during that marriage.

P.M.-T. also claims that the trial court erred by allowing the GAL to participate as a party in the proceedings regarding P.M.-T.'s standing as a parent. This claim is without merit.

The Juvenile Act requires a GAL to be appointed in dependency proceedings to represent the legal interests and the best interest of the child at every stage of the proceedings. **See** 42 Pa.C.S.A. § 6311(b).[7] In making his argument here, P.M.-T. fails to point to any statute or decision in this Commonwealth that makes any exceptions to this clear mandate, much less one that specifically precludes the GAL from participating when the issue of an alleged parent's standing arises during a child's dependency proceedings.

P.M.-T. simply fails to establish, and we do not discern, any error in the trial court's decision to allow the GAL to participate in the hearings related to P.M.-T.'s standing at Child's dependency proceedings, every stage of which Child is entitled to representation. **See** 42 Pa. C.S. § 6311(b).

Order reversed.

---

[7] 42 Pa.C.S.A. § 6311(b)(9), stating that a GAL does not have a conflict of interest where a child's best interests and legal interests diverge, was suspended by our Supreme Court. **See In re Adoption of L.B.M.**, 161 A.3d 172, 175 n.4 (Pa. 2017). Given Child's young age, there is no need to address whether the trial court should have appointed separate counsel to represent Child's legal interests. **See In re T.S.**, 192 A.3d 1080, 1089-92 (Pa. 2018).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  11/19/2019